**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

PLATYPUS HOLDINGS, LLC,           )
                                  )
      Plaintiff,                  )
                                  )
      v.                          )   C.A. No. 14-cv-00999-NIQA
                                  )
JEFFREY B. RUSSELL, M.D. and      )
ROSEMARY RUSSELL,                 )   <u>Jury Trial Demanded</u>
                                  )
      Defendants.                 )

**ANSWER AND AFFIRMATIVE DEFENSES OF
<u>JEFFREY B. RUSSELL AND ROSEMARY RUSSELL</u>**

Jeffrey B. Russell ("Jeffrey") and Rosemary Russell ("Rosemary," and collectively with Jeffrey, the "Russells"), hereby answer Plaintiff's Amended Complaint (the "Complaint"), and state as follows:

**<u>ANSWER TO COMPLAINT</u>**

1.      The Russells admit the averments of paragraph 1 of the Complaint, upon information and belief.

2.      Paragraph 2 of the Complaint is admitted as to Rosemary.  Jeffrey resides at 24 Brandywine Falls Road, Wilmington, Delaware.

3.      The averments of paragraph 3 of the Complaint set forth legal conclusions, to which no response is required.

4.      The averments of paragraph 4 of the Complaint set forth legal conclusions, to which no response is required.  The Russells further state that the Operating Agreement is a writing that speaks for itself.  The Russells refer to the Operating Agreement for its true and correct contents and deny any inaccurate characterization or interpretation of the Operating Agreement when read in context and in its entirety.

5.      The averments of paragraph 5 of the Complaint set forth legal conclusions, to which no response is required.

6.      The Russells admit that they executed the Subscription Agreement and the Operating Agreement on or about January 31, 2012.  The Russells further state that the Subscription Agreement and the Operating Agreement are writings that speak for themselves. The Russells refer to the Subscription Agreement and the Operating Agreement for their true and correct contents and deny any inaccurate characterizations or interpretations of the Subscription Agreement and the Operating Agreement when read in context and in their entirety.  The Russells admit the averments of the second sentence of paragraph 6 of the Complaint, except to the extent that the Russells rolled over the proceeds of a $200,000 loan to Mr. Taffet before they executed the Subscription Agreement and Operating Agreement.

7.      The Russells admit the averments of paragraph 7 of the Complaint.

8.      The Subscription Agreement is a writing that speaks for itself.  The Russells refer to the Subscription Agreement for its true and correct contents and deny any inaccurate characterization or interpretation of the Subscription Agreement when read in context and in its entirety.

9.      The Operating Agreement is a writing that speaks for itself.  The Russells refer to the Operating Agreement for its true and correct contents and deny any inaccurate characterization or interpretation of the Operating Agreement when read in context and in its entirety.

10.     The Subscription Agreement is a writing that speaks for itself.  The Russells refer to the Subscription Agreement for its true and correct contents and deny any inaccurate

characterization or interpretation of the Subscription Agreement when read in context and in its entirety. The Russells deny all the remaining averments of paragraph 10 of the Complaint.

11.     The Subscription Agreement is a writing that speaks for itself. The Russells refer to the Subscription Agreement for its true and correct contents and deny any inaccurate characterization or interpretation of the Subscription Agreement when read in context and in its entirety. The Russells deny all the remaining averments of paragraph 11 of the Complaint.

12.     The Operating Agreement is a writing that speaks for itself. The Russells refer to the Operating Agreement for its true and correct contents and deny any inaccurate characterization or interpretation of the Operating Agreement when read in context and in its entirety. The Russells deny all the remaining averments of paragraph 12 of the Complaint.

13.     The Subscription Agreement is a writing that speaks for itself. The Russells refer to the Subscription Agreement for its true and correct contents and deny any inaccurate characterization or interpretation of the Subscription Agreement when read in context and in its entirety. The Russells deny all the remaining averments of paragraph 13 of the Complaint.

14.     The Operating Agreement is a writing that speaks for itself. The Russells refer to the Operating Agreement for its true and correct contents and deny any inaccurate characterization or interpretation of the Operating Agreement when read in context and in its entirety. The Russells deny all the remaining averments of paragraph 14 of the Complaint.

15.     The Operating Agreement is a writing that speaks for itself. The Russells refer to the Operating Agreement for its true and correct contents and deny any inaccurate characterization or interpretation of the Operating Agreement when read in context and in its entirety. The Russells deny all the remaining averments of paragraph 15 of the Complaint.

16.    The Subscription Agreement is a writing that speaks for itself. The Russells refer to the Subscription Agreement for its true and correct contents and deny any inaccurate characterization or interpretation of the Subscription Agreement when read in context and in its entirety. The Russells deny all the remaining averments of paragraph 16 of the Complaint.

17.    The Operating Agreement is a writing that speaks for itself. The Russells refer to the Operating Agreement for its true and correct contents and deny any inaccurate characterization or interpretation of the Operating Agreement when read in context and in its entirety. The Russells deny all the remaining averments of paragraph 17 of the Complaint.

18.    The Operating Agreement is a writing that speaks for itself. The Russells refer to the Operating Agreement for its true and correct contents and deny any inaccurate characterization or interpretation of the Operating Agreement when read in context and in its entirety. The Russells deny all the remaining averments of paragraph 18 of the Complaint.

19.    Denied as stated. The Russells admit that Platypus purported to make capital calls, but deny that the capital calls were necessary, appropriate or proper. The Russells admit that they frequently contributed additional capital to Platypus and even prepaid capital amounts when requested. The Russells deny all the remaining averments of paragraph 19 of the Complaint.

20.    Denied as stated. The Russells admit that Platypus purported to make a capital call on August 3, 2013, but deny that the capital call was necessary, appropriate or proper. The purported August 2013 Capital Call is a writing that speaks for itself. The Russells refer to the purported August 2013 Capital Call for its true and correct contents and deny any inaccurate characterization or interpretation of the purported August 2013 Capital Call when read in context and in its entirety.

21.     The purported August 2013 Capital Call is a writing that speaks for itself.  The Russells refer to the purported August 2013 Capital Call for its true and correct contents and deny any inaccurate characterization or interpretation of the purported August 2013 Capital Call when read in context and in its entirety.  The Russells deny all the remaining averments of paragraph 21 of the Complaint.

22.     The purported August 2013 Capital Call is a writing that speaks for itself.  The Russells refer to the purported August 2013 Capital Call for its true and correct contents and deny any inaccurate characterization or interpretation of the purported August 2013 Capital Call when read in context and in its entirety.  The Russells deny all the remaining averments of paragraph 22 of the Complaint.

23.     Denied as stated.  The Russells admit that they did not make the demanded payment by August 7, 2013, but deny that not making the payment constituted a default under the Operating Agreement or in any other manner.  The Russells deny all the remaining averments of paragraph 23 of the Complaint.

24.     The August 8, 2013 email is attached to the Complaint as Exhibit F and is a writing that speaks for itself.  The Russells refer to the August 8, 2013 email for its true and correct contents and deny any inaccurate characterization or interpretation of the August 8, 2013 email when read in context and in its entirety.  The Russells deny all the remaining averments of paragraph 24 of the Complaint.

25.     The August 8, 2013 email is attached to the Complaint as Exhibit F and is a writing that speaks for itself.  The Russells refer to the August 8, 2013 email for its true and correct contents and deny any inaccurate characterization or interpretation of the August 8, 2013

email when read in context and in its entirety.  The Russells deny all the remaining averments of paragraph 25 of the Complaint.

26.     The Russells deny that they did not pay the amounts demanded in the purported August 2013 Capital Call.  The Russells deny all the remaining averments of paragraph 26 of the Complaint.

27.     Denied as stated.  The Russells admit that Platypus purported to make a capital call on December 17, 2013, but deny that the purported capital call was necessary, appropriate or proper.  The purported December 2013 Capital Call is a writing that speaks for itself.  The Russells refer to the purported December 2013 Capital Call for its true and correct contents and deny any inaccurate characterization or interpretation of the purported December 2013 Capital Call when read in context and in its entirety.

28.     The purported December 2013 Capital Call is a writing that speaks for itself.  The Russells refer to the purported December 2013 Capital Call for its true and correct contents and deny any inaccurate characterization or interpretation of the purported December 2013 Capital Call when read in context and in its entirety.  The Russells admit that they had previously paid Platypus $135,000 as an advance.  The Russells deny all the remaining averments of paragraph 28 of the Complaint.

29.     The purported December 2013 Capital Call is a writing that speaks for itself.  The Russells refer to the purported December 2013 Capital Call for its true and correct contents and deny any inaccurate characterization or interpretation of the purported December 2013 Capital Call when read in context and in its entirety.  The Russells deny all the remaining averments of paragraph 29 of the Complaint.

30.     The Russells admit that they made a $50,000 capital contribution to Platypus on December 20, 2013.  The Russells deny all the remaining averments of paragraph 30 of the Complaint.

31.     The averments of paragraph 31 of the Complaint set forth legal conclusions, to which no response is required.  The Russells deny all the averments of paragraph 31 of the Complaint.

32.     Denied as stated.  The Russells admit that Platypus purported to make a capital call on December 17, 2013, but deny that the capital call was necessary, appropriate or proper.  The purported December 2013 Capital Call is a writing that speaks for itself.  The Russells refer to the purported December 2013 Capital Call for its true and correct contents and deny any inaccurate characterization or interpretation of the purported December 2013 Capital Call when read in context and in its entirety.  The Russells deny all the remaining averments of paragraph 32 of the Complaint.

33.     The December 17, 2013 email is attached to the Complaint as Exhibits G, H, I and J and is a writing that speaks for itself.  The Russells refer to the December 17, 2013 email for its true and correct contents and deny any inaccurate characterization or interpretation of the December 17, 2013 email when read in context and in its entirety.  The Russells deny all the remaining averments of Paragraph 33 of the Complaint.

34.     Denied as stated.  The Russells admit that Platypus purported to make a capital call on January 7, 2014, but deny that the purported capital call was necessary, appropriate or proper.  The purported January 2014 Capital Call is a writing that speaks for itself.  The Russells refer to the purported January 2014 Capital Call for its true and correct contents and deny any

inaccurate characterization or interpretation of the purported January 2014 Capital Call when read in context and in its entirety.

35.     The purported January 2014 Capital Call is a writing that speaks for itself. The Russells refer to the purported January 2014 Capital Call for its true and correct contents and deny any inaccurate characterization or interpretation of the purported January 2014 Capital Call when read in context and in its entirety. The Russells deny all the remaining averments of paragraph 35 of the Complaint.

36.     The purported January 2014 Capital Call is a writing that speaks for itself. The Russells refer to the purported January 2014 Capital Call for its true and correct contents and deny any inaccurate characterization or interpretation of the purported January 2014 Capital Call when read in context and in its entirety. The Russells deny all the remaining averments of paragraph 36 of the Complaint.

37.     The Russells admit that they did not pay the amounts demanded in the purported January 2014 Capital Call, and deny that the purported capital call was necessary, appropriate or proper. The Russells deny all the remaining averments of paragraph 37 of the Complaint.

38.     The averments of paragraph 38 of the Complaint set forth legal conclusions to which no response is required. The Russells deny all the averments of paragraph 38 of the Complaint.

39.     The January 2014 email is attached to the Complaint as Exhibits K and L, and is a writing that speaks for itself. The Russells refer to the January 2014 email for its true and correct contents and deny any inaccurate characterization or interpretation of the January 2014 email when read in context and in its entirety. The Russells deny all the remaining averments of paragraph 39 of the Complaint.

40.    Denied as stated.  The Russells admit that Platypus purported to make a capital call on February 1, 2014, but deny that the purported capital call was necessary, appropriate or proper.  The purported February 1, 2014 Capital Call is a writing that speaks for itself.  The Russells refer to the purported February 1, 2014 Capital Call for its true and correct contents and deny any inaccurate characterization or interpretation of the purported February 1, 2014 Capital Call when read in context and in its entirety.

41.    The purported February 1, 2014 Capital Call is a writing that speaks for itself.  The Russells refer to the purported February 1, 2014 Capital Call for its true and correct contents and deny any inaccurate characterization or interpretation of the purported February 1, 2014 Capital Call when read in context and in its entirety.  The Russells deny all the remaining averments of paragraph 41 of the Complaint.

42.    The purported February 1, 2014 Capital Call is a writing that speaks for itself.  The Russells refer to the purported February 1, 2014 Capital Call for its true and correct contents and deny any inaccurate characterization or interpretation of the purported February 1, 2014 Capital Call when read in context and in its entirety.  The Russells deny all the remaining averments of paragraph 42 of the Complaint.

43.    The Russells admit that they did not pay the amounts demanded in the February 1, 2014 Capital Call, and deny that the purported capital call was necessary, appropriate or proper.  The Russells deny all the remaining averments of paragraph 43 of the Complaint.

44.    The averments of paragraph 44 of the Complaint set forth legal conclusions, to which no response is required.  The Russells deny all the averments of paragraph 44 of the Complaint.

45.     The February 1, 2014 email is attached to the Complaint as Exhibit M and is a writing that speaks for itself. The Russells refer to the February 1, 2014 email for its true and correct contents and deny any inaccurate characterization or interpretation of the February 1, 2014 email when read in context and in its entirety. The Russells deny all the remaining averments of paragraph 45 of the Complaint.

46.     Denied as stated. The Russells admit that Platypus purported to make a capital call on February 5, 2014, but deny that the capital call was necessary, appropriate or proper. The purported February 5, 2014 Capital Call is a writing that speaks for itself. The Russells refer to the purported February 5, 2014 Capital Call for its true and correct contents and deny any inaccurate characterization or interpretation of the purported February 5, 2014 Capital Call when read in context and in its entirety. The Russells deny all the remaining averments of paragraph 46 of the Complaint.

47.     The purported February 5, 2014 Capital Call is a writing that speaks for itself. The Russells refer to the purported February 5, 2014 Capital Call for its true and correct contents and deny any inaccurate characterization or interpretation of the purported February 5, 2014 Capital Call when read in context and in its entirety. The Russells deny all the remaining averments of paragraph 47 of the Complaint.

48.     The purported February 5, 2014 Capital Call is a writing that speaks for itself. The Russells refer to the purported February 5, 2014 Capital Call for its true and correct contents and deny any inaccurate characterization or interpretation of the purported February 5, 2014 Capital Call when read in context and in its entirety. The Russells deny all the remaining averments of paragraph 48 of the Complaint.

49.     The Russells admit that they did not pay the amounts demanded in the purported February 5, 2014 Capital Call, and deny that the purported capital call was necessary, appropriate or proper.  The Russells deny all the remaining averments of paragraph 49 of the Complaint.

50.     The averments of paragraph 50 of the Complaint set forth legal conclusions, to which no response is required.  The Russells deny all the averments of paragraph 50 of the Complaint.

51.     The February 5, 2014 email is attached to the Complaint as Exhibit F and it's a writing that speaks for itself.  The Russells refer to the February 5, 2014 email for its true and correct contents and deny any inaccurate characterization or interpretation of the February 5, 2014 email when read in context and in its entirety.  The Russells deny all the remaining averments of paragraph 51 of the Complaint.

52.     Denied as stated.  The Russells admit that Platypus emailed the Russells on February 16, 2014, purporting to exercise remedies under Section 4.3(a) of the Operating Agreement, but deny that the letter and the purported exercise of remedies were necessary, appropriate or proper.  The February 16, 2014 letter is a writing that speaks for itself.  The Russells refer to the February 16, 2014 letter for its true and correct contents and deny any inaccurate characterization or interpretation of the February 16, 2014 letter when read in context and in its entirety.  The Russells deny all the remaining averments of paragraph 52 of the Complaint.

53.     The averments of this paragraph of the Complaint set forth legal conclusions to which no response is required.  The February 16, 2014 letter and the Operating Agreement are writings that speak for themselves.  The Russells refer to the February 16, 2014 letter and the

Operating Agreement for their true and correct contents and deny any inaccurate characterization or interpretation of the February 16, 2014 letter or the Operating Agreement when read in context and in their entirety. The Russells deny all the remaining averments of paragraph 53 of the Complaint.

54.     The averments of this paragraph of the Complaint set forth legal conclusions to which no response is required. The Russells deny all the averments of paragraph 54 of the Complaint.

55.     Denied as stated. The Russells admit that Platypus purported to issue an invoice on February 16, 2014, but deny that the purported invoice was necessary, appropriate or proper. The purported February 16, 2014 invoice and the Operating Agreement are writings that speak for themselves. The Russells refer to the purported February 16, 2014 invoice and the Operating Agreement for their true and correct contents and deny any inaccurate characterization or interpretation of the purported February 16, 2014 invoice or the Operating Agreement when read in context and in their entirety. The Russells deny all the remaining averments of paragraph 55 of the Complaint.

56.     The Russells deny the averments of paragraph 56 of the Complaint.

57.     The Russells deny the averments of the first sentence of paragraph 57 of the Complaint. The June 16, 2014 email, attached to the Complaint as Exhibit Q, is neither official nor proper nor effective for any purpose. The June 16, 2014 email is a writing that speaks for itself. The Russells refer to the June 16, 2014 email for its true and correct contents and deny any inaccurate characterization or interpretation of the June 16, 2014 email when read in context and in its entirety.

58.      The June 16, 2014 email is a writing that speaks for itself.  The Russells refer to the June 16, 2014 email for its true and correct contents and deny any inaccurate characterization or interpretation of the June 16, 2014 email when read in context and in its entirety.

59.      The June 16, 2014 email is a writing that speaks for itself.  The Russells refer to the June 16, 2014 email for its true and correct contents and deny any inaccurate characterization or interpretation of the June 16, 2014 email when read in context and in its entirety.  The Russells deny all the remaining averments of paragraph 59 of the Complaint.

60.      The Russells admit the averments of paragraph 60 of the Complaint, upon information and belief.

61.      The Construction and Sale Agreement attached as Exhibit R is a writing that speaks for itself.  The Russells refer to the Construction and Sale Agreement for its true and correct contents and deny any inaccurate characterization or interpretation of the Construction and Sale Agreement when read in context and in its entirety.

62.      The Construction and Sale Agreement is a writing that speaks for itself.  The Russells refer to the Construction and Sale Agreement for its true and correct contents and deny any inaccurate characterization or interpretation of the Construction and Sale Agreement when read in context and in its entirety.

63.      The Construction and Sale Agreement is a writing that speaks for itself.  The Russells refer to the Construction and Sale Agreement for its true and correct contents and deny any inaccurate characterization or interpretation of the Construction and Sale Agreement when read in context and in its entirety.

64.      The Russells admit that they approved Management's assignment of the Construction and Sale Agreement to Platypus.  The Russells further state that the Construction

-13-

and Sale Agreement is a writing that speaks for itself. The Russells refer to the Construction and Sale Agreement for its true and correct contents and deny any inaccurate characterization or interpretation of the Construction and Sale Agreement when read in context and in its entirety. The Russells deny all the remaining averments of paragraph 64 of the Complaint.

65.     The Russells admit that they paid substantial amounts to Platypus in connection with 50 Fairview. The Russells deny all the remaining averments of paragraph 65 of the Complaint.

66.     The Russells are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 66 of the Complaint.

67.     The Russells admit that they paid for and purchased 50 Fairview in their own names. The Russells further state that Construction and Sale Agreement is a writing that speaks for itself. The Russells refer to the Construction and Sale Agreement for its true and correct contents and deny any inaccurate characterization or interpretation of the Construction and Sale Agreement when read in context and in its entirety. The Russells deny all the remaining averments of paragraph 67 of the Complaint.

68.     The Russells are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 68 of the Complaint.

69.     The Russells admit that they had the financial ability to purchase 50 Fairview, and that they did purchase 50 Fairview by obtaining a line of credit. The Russells deny all the remaining averments of paragraph 69 of the Complaint, particularly that they "agreed to purchase 50 Fairview on behalf of Platypus."

70.     The Russells admit that prior to their purchase of 50 Fairview, they communicated with Platypus about the property.  The Russells deny all the remaining averments of paragraph 70 of the Complaint.

71.     The Russells admit that they purchased 50 Fairview in their own names.  The Russells deny all the remaining averments of paragraph 71 of the Complaint.

72.     The emails referred to in paragraph 72 of the Complaint are writings that speaks for themselves.  The Russells refer to the emails for their true and correct contents and deny any inaccurate characterization or interpretation of the emails when read in context and in their entirety.  The Russells deny all the remaining averments of paragraph 72 of the Complaint.

73.     The Russells deny all the averments of paragraph 73 of the Complaint.

74.     The Russells admit that Rosemary Russell attended the closing of 50 Fairview on November 12, 2012.  The Russells admit that Mr. Taffet attended the closing of 50 Fairview, but did so at his own insistence and not at Rosemary's invitation.  The Russells deny all the remaining averments of paragraph 74 of the Complaint.

75.     The Russells admit that they purchased 50 Fairview in their own names using a personal line of credit.  The Russells deny all the remaining averments of paragraph 75 of the Complaint.

76.     The text message referred to in paragraph 76 of the Complaint is a writing that speaks for itself.  The Russells refer to the text message for its true and correct contents and deny any inaccurate characterization or interpretation of the text message when read in context and in its entirety.  The Russells deny all the remaining averments of paragraph 76 of the Complaint.

77.     The Russells admit that they are the sole owners of 50 Fairview both in title and in deed, and that Platypus has no interest in the property.  The Russells deny all the remaining averments of paragraph 77 of the Complaint.

78.     The Russells admit that they are the sole owners of 50 Fairview, that Platypus has no interest in the property.  The Russells deny that they purchased 50 Fairview for the benefit of Platypus.

79.     The Russells admit that they are the sole owners of 50 Fairview and that Platypus has no interest in the property, and that Platypus has no right to use 50 Fairview for collateral or for any other purpose.  The Russells deny all the remaining averments of paragraph 79 of the Complaint.

80.     The Russells admit that they are the sole owners of 50 Fairview, and that Platypus has no interest in the property.  The Russells deny all the remaining averments of paragraph 80 of the Complaint.

81.     The averments of paragraph 81 of the Complaint set forth legal conclusions, to which no response is required.

82.     The Russells incorporate their responses to paragraphs 1-81 of the Complaint as if fully set forth herein.

83.     The averments of paragraph 83 of the Complaint set forth legal conclusions, to which no response is required.  The Russells further state that the Subscription Agreement and the Operating Agreement are writings that speak for themselves.  The Russells refer to the Subscription Agreement and the Operating Agreement for their true and correct contents and deny any inaccurate characterization or interpretation of the Subscription Agreement and the Operating Agreement when read in context and in their entirety.

84.     The averments of this paragraph of the Complaint set forth legal conclusions, to which no response is required.  The Russells further state that the Subscription Agreement and the Operating Agreement are writings that speak for themselves.  The purported capital calls referenced in the Complaint were not necessary, appropriate or proper.  The Russells refer to the Subscription Agreement and the Operating Agreement for their true and correct contents and deny any inaccurate characterization or interpretation of the Subscription Agreement and the Operating Agreement when read in context and in their entirety.

85.     Denied as stated.  The Russells admit that Platypus purported to make capital calls, but deny that the capital calls were necessary, appropriate or proper.  The Russells admit that they frequently contributed capital to Platypus.

86.     The averments of paragraph 86 of the Complaint set forth legal conclusions, to which no response is required.

87.     The averments of paragraph 87 of the Complaint set forth legal conclusions, to which no response is required.

88.     The Russells incorporate their responses to paragraphs 1-87 of the Complaint as if fully set forth herein.

89.     The averments of the first sentence of paragraph 89 of the Complaint set forth legal conclusions, to which no response is required.  The Subscription Agreement and the Operating Agreement are writings that speak for themselves.  The purported capital calls referenced in the Complaint were not necessary, appropriate or proper.  The Russells refer to the Subscription Agreement and the Operating Agreement for their true and correct contents and deny any inaccurate characterization or interpretation of the Subscription Agreement and the

Operating Agreement when read in context and in their entirety. The Russells deny all the remaining averments of the second sentence of paragraph 89 of the Complaint.

90.     Denied as stated. The Russells admit that John M. Gerber, Esquire emailed the Russells on February 16, 2014, purporting to exercise remedies under Section 4.3(a) of the Operating Agreement, but deny that the letter was necessary, appropriate or proper. The February 16, 2014 letter is a writing that speaks for itself. The Russells refer to the February 16, 2014 letter for its true and correct contents and deny any inaccurate characterization or interpretation of the February 16, 2014 letter when read in context and in its entirety. The Russells deny all the remaining averments of paragraph 90 of the Complaint.

91.     The averments of the first sentence of paragraph 91 of the Complaint set forth legal conclusions, to which no response is required. The Operating Agreement is a writing that speaks for itself. The Russells refer to the Operating Agreement for its true and correct contents and deny any inaccurate characterization or interpretation of the Operating Agreement when read in context and in its entirety. The Russells admit the averments of the second sentence of paragraph 91 of the Complaint. The Russells deny all the remaining averments of paragraph 91 of the Complaint.

92.     The Russells incorporate their responses to paragraphs 1-91 of the Complaint as if fully set forth herein.

93.     The Russells deny the averments of paragraph 93 of the Complaint. The averments of this paragraph of the Complaint set forth legal conclusions, to which no response is required. The purported capital calls referenced in the Complaint were not necessary, appropriate or proper. The Russells deny all the remaining averments of paragraph 93 of the Complaint.

94.     Denied as stated.  The Russells admit that John M. Gerber, Esquire emailed the Russells on February 16, 2014, purporting to exercise remedies under Section 4.3(a) of the Operating Agreement, but deny that the letter and the remedies were necessary, appropriate or proper.  The Russells further state that the February 16, 2014 letter is a writing that speaks for itself.  The Russells refer to the February 16, 2014 letter for its true and correct contents and deny any inaccurate characterization or interpretation of the February 16, 2014 letter when read in context and in its entirety.  The Russells deny all the remaining averments of paragraph 94 of the Complaint.

95.     The Operating Agreement is a writing that speaks for itself.  The averments of this paragraph of the Complaint set forth legal conclusions, to which no response is required.  The Russells refer to the Operating Agreement for their true and correct contents and deny any inaccurate characterization or interpretation of the Operating Agreement when read in context and in its entirety.

96.     The June 16, 2014 email and the Operating Agreement are writings that speak for themselves.  The purported capital calls referenced in the Complaint were not necessary, appropriate or proper.  The Russells refer to the June 16, 2014 email and the Operating Agreement for their true and correct contents and deny any inaccurate characterization or interpretation of the June 16, 2014 email and the Operating Agreement when read in context and in their entirety.  The Russells deny all the remaining averments of paragraph 96 of the Complaint.

97.     The averments of the first sentence of paragraph 97 of the Complaint set forth legal conclusions, to which no response is required.  The Operating Agreement is a writing that speaks for itself.  The Russells refer to the Operating Agreement for its true and correct contents

and deny any inaccurate characterization or interpretation of the Operating Agreement when read in context and in its entirety.  The Russells admit the averments of the second sentence of paragraph 97 of the Complaint.  The Russells deny all the remaining averments of paragraph 97 of the Complaint.

98.     The averments of the first sentence of paragraph 98 of the Complaint set forth legal conclusions, to which no response is required.  The Operating Agreement is a writing that speaks for itself.  The Russells refer to the Operating Agreement for its true and correct contents and deny any inaccurate characterization or interpretation of the Operating Agreement when read in context and in its entirety.  The Russells deny all the remaining averments of paragraph 98 of the Complaint.

99.     The Russells incorporate their responses to paragraphs 1-98 of the Complaint as if fully set forth herein.

100.     The averments of paragraph 100 of the Complaint set forth legal conclusions, to which no response is required.

101.     The Russells deny all the averments of paragraph 101 of the Complaint.

102.     The Russells admit the averments of paragraph 102 of the Complaint.

103.     The Russells deny that they are obligated to compensate Platypus for any expenses.

104.     The Russells deny all the averments of paragraph 104 of the Complaint, but admit they will not allow Platypus to leverage 50 Fairview.

105.     The Russells admit the averments of paragraph 105 of the Complaint.

106.     The averments of paragraph 106 of the Complaint set forth legal conclusions, to which no response is required.

107.    The averments of paragraph 107 of the Complaint set forth legal conclusions, to which no response is required.

108.    The Russells incorporate their responses to paragraphs 1-107 of the Complaint as if fully set forth herein.

109.    The averments of paragraph 109 of the Complaint set forth legal conclusions, to which no response is required.

110.    The averments of paragraph 110 of the Complaint set forth legal conclusions, to which no response is required.  The Russells deny all the remaining averments of paragraph 110 of the Complaint.

111.    The averments of paragraph 111 of the Complaint set forth legal conclusions, to which no response is required.  The Russells deny all the remaining averments of paragraph 111 of the Complaint.

112.    The Russells incorporate their responses to paragraphs 1-111 of the Complaint as if fully set forth herein.

113.    The averments of paragraph 113 of the Complaint set forth legal conclusions, to which no response is required.

114.    The averments of paragraph 114 of the Complaint set forth legal conclusions, to which no response is required.

115.    The Russells admit that they are the sole owners of 50 Fairview, and that Platypus has no interest in the property.  The remaining averments of paragraph 115 of the Complaint set forth legal conclusions, to which no response is required.  The Russells deny all the remaining averments of paragraph 115 of the Complaint.

116.    The averments of paragraph 116 of the Complaint set forth legal conclusions, to which no response is required.

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails, in whole or in part, to state a claim on which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims for breach of contract are barred, in whole or in part, by Plaintiff's failure to mitigate.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims for breach of contract are barred, in whole or in part, by Plaintiff's breaches of the same contracts.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of unclean hands.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because any damages allegedly sustained by Plaintiff were caused, in whole or in part, by Plaintiff's own acts and/or omissions.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrines of waiver and laches.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrines of accord and satisfaction, ratification, consent or release.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because of fraud committed by Plaintiff or third parties acting on Plaintiff's behalf, in inducing the Russells to invest in Plaintiff and in operating Platypus to their own advantage and to the Russells' detriment.

### NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the terms of the applicable agreements.

### TENTH AFFIRMATIVE DEFENSE

To the extent either of the Russells is liable to Plaintiff in any amount, which they deny, they are entitled to offset any damages caused by Plaintiff as a result of its bad faith and/or tortious conduct in connection with the matters at issue in this action.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by its breaches of the implied covenant of good faith and fair dealing contained in each of the agreements at issue in this action, including, without limitation, the Operating Agreement, the Subscription Agreement, and the agreements relating to the sale of 50 Fairview.

### TWELFTH AFFIRMATIVE DEFENSE

Plaintiff has suffered no damages.

### RESERVATION OF DEFENSES

Defendants reserve the right to assert any and all additional defenses, both factual and legal, as may be justified by information subsequently obtained.

WHEREFORE, the Russells demand judgment in their favor and against Platypus on all Counts of the Complaint and such other and further relief as this Court deems just and proper.

Dated:      July 21, 2014

/s/ Francis P. Devine, III
Francis P. Devine, III, Esq.
PEPPER HAMILTON LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
Telephone: 215-981-4000
devinef@pepperlaw.com

and

James H. S. Levine
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, DE 19801
Telephone: 302.777.6536
levinejh@pepperlaw.com

Attorneys for Jeffrey B. Russell
and Rosemary Russell

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PLATYPUS HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 14-cv-00999-NIQA |
| | ) | |
| JEFFREY B. RUSSELL, M.D. and | ) | |
| ROSEMARY RUSSELL, individually and | ) | |
| derivatively on behalf of PLATYPUS | ) | |
| HOLDINGS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>VERIFICATION</u>

I, Jeffrey B. Russell, hereby state as follows:

1.     I have read the foregoing and hereby state that the facts set forth therein are true and correct to the best of my knowledge or information and belief.

2.     I declare under penalty of perjury that the foregoing is true and correct.


Dated: July 21, 2014

_____
Jeffrey B. Russell

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PLATYPUS HOLDINGS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 14-cv-00999-NIQA |
| | ) |
| JEFFREY B. RUSSELL, M.D. and | ) |
| ROSEMARY RUSSELL, individually and | ) |
| derivatively on behalf of PLATYPUS | ) |
| HOLDINGS, LLC, | ) |
| | ) |
| Defendants. | ) |

## VERIFICATION

I, Rosemary Russell, hereby state as follows:

1.      I have read the foregoing and hereby state that the facts set forth therein are true and correct to the best of my knowledge or information and belief.

2.      I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 21, 2014

_____
Rosemary Russell

2

## CERTIFICATE OF SERVICE

I, Francis P. Devine, III, hereby certify that on July 21, 2014, I caused a true and correct copy of the foregoing Answer and Affirmative Defenses of Jeffrey B. Russell and Rosemary Russell to be served on the following counsel of record via ECF transmission:

>Aaron J. Freiwald, Esquire
>Layser & Freiwald
>1500 Walnut Street, 18th Floor
>Philadelphia, PA  19102

>*/s/ Francis P. Devine, III*
>Francis P. Devine, III