**EXHIBIT 8**

50 Fairview Rd Mailed 11.10.12

# EXHIBIT D-STANDARD AOS

**STANDARD AGREEMENT FOR THE SALE OF REAL ESTATE**     ASR
This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of REALTORS® (PAR).

## PARTIES

| BUYER(S): JEFFREY B RUSSELL | SELLER(S): LESTER SCHAEVITZ |
|---|---|
| ROSEMARY RUSSELL | DIANE SCHAEVITZ |
| BUYER'S MAILING ADDRESS: | SELLER'S MAILING ADDRESS: |

PROPERTY ADDRESS: 50 FAIRVIEW RD    PROPERTY NARBERTH PA.    ZIP 19072
In the municipality of LOWER MERION, County of MONTGOMERY
In the School District of LOWER MERION, in the Commonwealth of Pennsylvania
Identification (e.g. Tax ID #, Parcel #, Lot, Block: Deed Book, Page, Recording Date): Tax Map ID

### BUYER'S RELATIONSHIP WITH PA LICENSED BROKER

☐ No Business Relationship (Buyer is not represented by a broker)
Broker (Company) PRUDENTIAL FOX + ROACH    Licensee(s) (Name) IVORY HOFFMAN
Company Address 763 W LANCASTER AVE BRYN MAWR PA. 19010    Direct Phone(s) 610-999-4331   Cell Phone(s) 610-999-4331
Company Phone 610-527-0900    Fax 610-520-9011
Company Fax 610-520-9011    Email IVORY.HOFFMAN@PRUFOXROACH.COM
Broker is:    Licensee(s) is:
☐ Buyer Agent (Broker represents Buyer only)    ☐ Buyer Agent with Designated Agency
☑ Dual Agent (See Dual and/or Designated Agent box below)    ☐ Buyer Agent with Designated Agency
☐ Transaction Licensee (Broker and Licensee(s) provide real estate services But do not represent Buyer)    ☑ Dual Agent (See Dual and/or Designated Agent box below)

### SELLER'S RELATIONSHIP WITH PA LICENSED BROKER

☐ No Business Relationship (Seller is not represented by a broker)
Broker (Company) PRUDENTIAL FOX + ROACH    Licensee(s) (Name) IVORY HOFFMAN
Company Address    Direct Phone(s) 610-999-4331   Cell Phone(s) 610-999-4331
Company Phone 610-527-0900    Fax 610-520-9011
Company Fax 610-520-9011    Email IVORY.HOFFMAN@PRUFOXROACH.COM
Broker is:    Licensee(s) is
☐ Seller Agent (Broker represents Seller only)    ☐ Seller Agent with Designated Agency
☑ Dual Agent (See Dual and/or Designated Agent box below)    ☐ Seller Agent with Designated Agency
☐ Transaction Licensee (Broker and Licensee(s) provide real estate services But do not represent Seller)    ☑ Dual Agent (See Dual and/or Designated Agent box below)

### DUAL AND/OR DESIGNATED AGENCY

A Broker is a Dual Agent when a Broker represents both Buyer and Seller in the same transaction. A Licensee is a Dual Agent when a Licensee represents Buyer and Seller in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for Buyer and Seller. If the same Licensee is designated for Buyer and Seller, the Licensee is a Dual Agent.

By signing this Agreement, Buyer and Seller each acknowledge having been previously informed of, and consented to,

ASR Page 1 of 11

Buyer Initials: RLR / JBR      Seller Initials: DS / LS
Pennsylvania Association of REALTORS      COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2012
1/10

1. 1. By this Agreement, dated _____
2.    Seller hereby agrees to sell and convey to Buyer, who agrees to purchase, the identified Property.
3. 2. **PURCHASE PRICE AND DEPOSITS (1-10)**
4.    (A) Purchase Price $ _1,000,000.00_
5.
6.    ~~Three Hundred Ninety-Seven Thousand Five Hundred (U.S. Dollars), to be paid by Buyer as follows:~~
7.    1. Deposit at signing of this Agreement:................................................................................ $ _200,000.00_
8.    2. Deposit within _____ days of the Execution Date of this Agreement:................................. $
9.    3.
10.   4. Remaining balance will be paid at settlement.
11.   (B) All funds paid by Buyer, including deposits, will be paid by check, cashier's check or wired funds. All funds paid by Buyer
12.       within 30 DAYS of settlement, including funds paid at settlement, will be by cashier's check or wired funds, but not by personal
13.       check.
14.   (C) Deposits, regardless of the form of payment and the person designated as payee, will be paid in U.S. Dollars to Broker for Seller
15.       (unless otherwise stated here: **SELLER COUNSEL: LUNDY BELDECOS & MILBY, PC** ),
16.       who will retain deposits in an escrow account in conformity with all applicable laws and regulations until consummation or termination
17.       of this Agreement. Only real estate brokers are required to hold deposits in accordance with the rules and regulations of
18.       the State Real Estate Commission. Checks tendered as deposit monies may be held uncashed pending the execution of this Agreement.
19.
20. 3. **SELLER ASSIST (If Applicable) (1-10)**
21.    Seller will pay $ _____ or _____ % of Purchase Price (0 if not specified) toward
22.    Buyer's costs, as permitted by the mortgage lender, if any Seller is only obligated to pay up to the amount or percentage which is
23.    approved by mortgage lender.
24. 4. **SETTLEMENT AND POSSESSION (1-10)**
25.    (A) Settlement Date is _____, or before if Buyer and Seller agree.
26.    (B) Settlement will occur in the county where the Property is located or in an adjacent county, during normal business hours, unless
27.        Buyer and Seller agree otherwise.
28.    (C) At time of settlement, the following will be pro-rated on a daily basis between Buyer and Seller, reimbursing where applicable:
29.        current taxes (see Notice Regarding Real Estate Taxes); rents; interest on mortgage assumptions; condominium fees and home-
30.        owner association fees; water and/or sewer fees, together with any other lienable municipal service fees. All charges will be pro-
31.        rated for the period(s) covered. Seller will pay up to and including the date of settlement and Buyer will pay for all days following
32.        settlement unless otherwise stated here: _____
33.    _____
34.    (D) Conveyance from Seller will be by fee simple deed of special warranty unless otherwise stated here: _____
35.    _____
36.    (E) Payment of transfer taxes will be divided equally between Buyer and Seller unless otherwise stated here: _____
37.    _____
38.    (F) Possession is to be delivered by deed, existing keys and physical possession to a vacant Property free of debris, with all structures
39.        broom-clean, at day and time of settlement, unless Seller, before signing this Agreement, has identified in writing that the Property is
40.        subject to a lease.
41.    (G) If Seller has identified in writing that the Property is subject to a lease, possession is to be delivered by deed, existing keys and
42.        assignment of existing leases for the Property, together with security deposits and interest, if any, at day and time of settlement. Seller
43.        will not enter into any new leases, nor extend existing leases, for the Property without the written consent of Buyer. Buyer will
44.        acknowledge existing lease(s) by initialing the lease(s) at the execution of this Agreement, unless otherwise stated in this Agreement.
45.        ☐ Tenant-Occupied Property Addendum (PAR Form TOP) is attached.
46. 5. **DATES/TIME IS OF THE ESSENCE (1-10)**
47.    (A) Written acceptance of all parties will be on or before: _____
48.    (B) The Settlement Date and all other dates and times identified for the performance of any obligations of this Agreement are of the
49.        essence and are binding.
50.    (C) The Execution Date of this Agreement is the date when Buyer and Seller have indicated full acceptance of this Agreement by sign-
51.        ing and/or initialing it. For purposes of this Agreement, the number of days will be counted from the Execution Date, excluding
52.        the day this Agreement was executed and including the last day of the time period. All changes to this Agreement should be ini-
53.        tialed and dated.
54.    (D) The Settlement Date is not extended by any other provision of this Agreement and may only be extended by mutual written agree-
55.        ment of the parties.
56.    (E) Certain terms and time periods are pre-printed in this Agreement as a convenience to the Buyer and Seller. All pre-printed terms
57.        and time periods are negotiable and may be changed by striking out the pre-printed text and inserting different terms acceptable
58.        to all parties.
59. 6. **ZONING (1-10)**
60.    Failure of this Agreement to contain the zoning classification (except in cases where the property {and each parcel thereof, if subdi-
61.    vidable} is zoned solely or primarily to permit single-family dwellings) will render this Agreement voidable at Buyer's option, and, if
62.    voided, any deposits tendered by the Buyer will be returned to the Buyer without any requirement for court action.
63.    Zoning Classification: _____

64. Buyer Initials: _RLR_ _[initials]_     ASR Page 2 of 11     Seller Initials: _[initials]_
                                           Revised 1/12

25

+ Agent for Seller

7. **FIXTURES AND PERSONAL PROPERTY (1-10)**
65  (A) INCLUDED in this sale are all existing items permanently installed in the Property, free of liens, and other items including
66  plumbing; heating; radiator covers; lighting fixtures (including chandeliers and ceiling fans); pool and spa equipment (including
67  covers and cleaning equipment); electric animal fencing systems (excluding collars); garage door openers and transmitters;
68  television antennas; unpotted shrubbery, plantings and trees; any remaining heating and cooking fuels stored on the Property at
69  the time of settlement; smoke detectors and carbon monoxide detectors; sump pumps; storage sheds; fences; mailboxes; wall to
70  wall carpeting; existing window screens, storm windows and screen/storm doors; window covering hardware, shades and blinds;
71  awnings; built-in air conditioners; built-in appliances; the range/oven, unless otherwise stated; and, if owned, water treatment
72  systems, propane tanks, satellite dishes and security systems. Also included: **SEE ADDENDUM "A" ATTACHED HERETO**
73  **AND MADE A PART HEREOF**
74  (B) The following items are LEASED (not owned by Seller). Contact the provider/vendor for more information (e.g., water treatment
75  systems, propane tanks, satellite dishes and security systems).
76  (C) EXCLUDED fixtures and items: **SEE ADDENDUM "B" – ATTACHED HERETO AND MADE A PART HEREOF**

78. **MORTGAGE CONTINGENCY (1-10)**
79  ☐ WAIVED. This sale is NOT contingent on mortgage financing, although Buyer may obtain mortgage financing and/or the par-ties may
80     include an appraisal contingency.
81  ☐ ELECTED.
82  (A) This sale is contingent upon Buyer obtaining mortgage financing according to the following terms:

| First Mortgage on the Property | Second Mortgage on the Property |
|---|---|
| Loan Amount: $.00 | Loan Amount |
| Minimum Term: years | Minimum Term       years |
| Type of mortgage | Type of mortgage |
| Loan-To-Value (LTV) ratio: | Loan-To-Value (LTV) ratio: |
| For non-FHA/VA loans LTV ratio not to exceed  Mortgage lender **OF BUYER'S CHOOSING** | For non-FHA/VA loans LTV ratio not to exceed _____ Mortgage lender _____ |
| Interest rate ___%; however, Buyer agrees to accept the interest rate as may be committed by the mortgage lender, not to exceed a maximum interest rate of ( %) Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) | Interest rate ___%; however, Buyer agrees to accept the interest rate as may be committed by the mortgage lender, not to exceed a maximum interest rate of ___%. Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) not to exceed ___% (0% if not specified) of the mortgage loan. |

99  (B) The interest rate(s) and fee(s) provisions in Paragraph 8(A) are satisfied if the mortgage lender(s) gives Buyer the right to guar-
100 antee the interest rate(s) and fee(s) at or below the maximum levels stated. If lender(s) gives Buyer the right to lock in the inter-
101 est rate(s), Buyer will do so at least __15__ days before Settlement Date. Buyer gives Seller the right, at Seller's sole option and
102 as permitted by law and the mortgage lender(s), to contribute financially, without promise of reimbursement, to the Buyer and/or
103 the mortgage lender(s) to make the above mortgage term(s) available to Buyer.
104 (C) Within **TEN (10)** days (7 if not specified) from the Execution Date of this Agreement, Buyer will make a completed, written mort-
105 gage application (including payment for and ordering of appraisal and credit reports without delay, at the time required by
106 lender(s)) for the mortgage terms and to the mortgage lender(s) identified in Paragraph 8(A), if any, otherwise to a responsible
107 mortgage lender(s) of Buyer's choice. Broker for Buyer, if any, otherwise Broker for Seller, is authorized to communicate with
108 the mortgage lender(s) to assist in the mortgage loan process.
109 (D) Buyer will be in default of this Agreement if Buyer furnishes false information to anyone concerning Buyer's financial
110 and/or employment status, fails to cooperate in good faith with processing the mortgage loan application (including delay
111 of the appraisal), fails to lock in interest rate(s) as stated in Paragraph 8(B), or otherwise causes the lender to reject, refuse
112 to approve or issue a mortgage loan commitment.
113 (E) 1. Mortgage Commitment Date: _____. Upon receiving a mortgage commitment, Buyer will
114 promptly deliver a copy of the commitment to Seller.
115 2. If Seller does not receive a copy of the mortgage commitment(s) by the Mortgage Commitment Date, Seller may terminate
116 this Agreement by written notice to Buyer. Seller's right to terminate continues until Buyer delivers a mortgage commitment
117 to Seller. Until Seller terminates this Agreement, Buyer is obligated to make a good-faith effort to obtain mortgage financing.
118 3. Seller may terminate this Agreement by written notice to Buyer after the Mortgage Commitment Date if the mortgage commitment:
119    a. Does not satisfy the terms of Paragraph 8(A), OR
120    b. Contains any condition not specified in this Agreement (e.g., the Buyer must settle on another property, an appraisal must
121       be received by the lender, or the mortgage commitment is not valid through the Settlement Date) that is not satisfied and/or
122       removed in writing by the mortgage lender(s) within **SEVEN (7)** DAYS after the Mortgage Commitment Date in Paragraph
123       8(E)(1), or any extension thereof, other than those conditions that are customarily satisfied at or near settlement (e.g.,
124       obtaining insurance, confirming employment).
125 4. If this Agreement is terminated pursuant to Paragraphs 8(E)(2) or (3), or the mortgage loan(s) is not obtained for settlement,
126 all deposit monies will be returned to Buyer according to the terms of Paragraph 22 and this Agreement will be VOID. Buyer
127 will be responsible for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of
128 this Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any
129 fee for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancel-
130 lation; (3) Appraisal fees and charges paid in advance to mortgage lender(s).

26



131 Buyer Initials: RLR gw2     ASR Page 3 of 11
Revised 1/12     Seller Initials: DJS

27

ASR Page 3 of 11
Revised 1/12

132  (F) If the mortgage lender(s), or a property and casualty insurer providing insurance required by the mortgage lender(s), requires
133       repairs to the Property, Buyer will, upon receiving the requirements, deliver a copy of the requirements to Seller. Within    5
134       DAYS of receiving the copy of the requirements, Seller will notify Buyer whether Seller will make the required repairs at Seller's
135       expense.
136       1. If Seller makes the required repairs to the satisfaction of the mortgage lender and/or insurer, Buyer accepts the Property and
137          agrees to the RELEASE in Paragraph 25 of this Agreement.
138       2. If Seller will not make the required repairs, or if Seller fails to respond within the stated time, Buyer will, within    5
139          DAYS, notify Seller of Buyer's choice to:
140              a. Make the repairs/improvements at Buyer's expense, with permission and access to the Property given by Seller, which
141                 will not be unreasonably withheld, OR
142              b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
143                 Paragraph 23 of this Agreement.
144       If Buyer fails to respond within the time stated in Paragraph 8(F)(2) or fails to terminate this Agreement by written notice
145       to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 25 of this Agreement.
146                              FHA/VA, IF APPLICABLE
147  (G) It is expressly agreed that notwithstanding any other provisions of this contract, Buyer will not be obligated to complete the pur-
148       chase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless Buyer
149       has been given, in accordance with HUD/FHA or VA requirements, a written statement by the Federal Housing Commissioner,
150       Veterans Administration, or a Direct Endorsement Lender setting forth the appraised value of the Property of not less than
151       $_____ (the Purchase Price as stated in this Agreement). Buyer will have the privilege and option of
152       proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation
153       is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does
154       not warrant the value nor the condition of the Property. Buyer should satisfy himself/herself that the price and condition of the
155       Property are acceptable.
156       Warning: Section 1010 of Title 18, U.S.C., Department of Housing and Urban Development and Federal Housing
157       Administration Transactions, provides, "Whoever for the purpose of . . . influencing in any way the action of such Department,
158       makes, passes, utters or publishes any statement, knowing the same to be false shall be fined under this title or imprisoned not
159       more than two years, or both."
160  (H) **U.S. Department of Housing and Urban Development (HUD) NOTICE TO PURCHASERS: Buyer's Acknowledgement**
161       ☐ Buyer has received the HUD Notice "For Your Protection: Get a Home Inspection." Buyer understands the importance of
162       getting an independent home inspection and has thought about this before signing this Agreement. Buyer understands that
163       FHA will not perform a home inspection nor guarantee the price or condition of the Property.
164  (I) Certification We the undersigned, Seller(s) and Buyer(s) party to this transaction each certify that the terms of this contract
165       for purchase are true to the best of our knowledge and belief, and that any other agreement entered into by any of these parties
166       in connection with this transaction is attached to this Agreement.
167 9. **CHANGE IN BUYER'S FINANCIAL STATUS (3-11)**
168       In the event of a change in Buyer's financial status affecting Buyer's ability to purchase, Buyer shall promptly notify Seller and
169       lender(s) to whom the Buyer submitted mortgage application, if any. A change in financial status includes, but is not limited to, loss
170       or a change in employment; failure or loss of sale of Buyer's home; Buyer's having incurred a new financial obligation; entry of a
171       judgment against Buyer. **Buyer understands that applying for and/or incurring an additional financial obligation may affect**
172       **Buyer's ability to purchase.**
173 10. **SELLER REPRESENTATIONS (1-10)**
174    (A) **Radon Testing and Remediation** (See Notice Regarding Radon)
175         Seller has no knowledge about the presence or absence of radon unless checked below:
176  ☐ 1. Seller has knowledge that the Property was tested on the dates and by the methods (e.g. charcoal canister, alpha track,
177       etc.), which produced the results indicated below:
178       Date          Type of Test     Results (picoCuries/liter or working levels)      Name of Testing Service
179
180
181  ☐ 2. Seller has knowledge that the Property had radon removal system(s) installed as indicated below:
182       Date Installed    Type of System                   Provider
183
184
185  Copies of all available test reports will be delivered to Buyer with this Agreement. Seller does not warrant the meth-
186  ods or the results of radon tests.
187  (B) **Status of Water**
188  Seller represents that the Property is served by:
189  ☐ Public Water ☐ Community Water ☐ On-site Water ☐ None ☐
190  (C) **Status of Sewer**
191  Seller represents that the Property is served by:
192  ☐ Public Sewer                              ☐ Community Sewage Disposal System ☐ Ten-Acre Permit Exemption (see Sewage Notice 2)
193  ☐ Individual On-lot Sewage Disposal System (see Sewage Notice 1)          ☐ Holding Tank (see Sewage Notice 3)
194  ☐ Individual On-lot Sewage Disposal System in Proximity to Well (see Sewage Notice 1; see Sewage Notice 4, if applicable)
195  ☐ None (see Sewage Notice 1) ☐ None Available/Permit Limitations in Effect (see Sewage Notice 5)
196  ☐ _____

197 Buyer Initials: *RLR* *JBN*              ASR Page 4 of 11              Seller Initials: [signature]
                                             Revised 1/12

| 198 | (D) **Historic Preservation** |
| 199 | Seller is not aware of historic preservation restrictions regarding the Property unless otherwise stated here: |
| 200 | |
| 201 | (E) ☐ Property, or a portion of it, is preferentially assessed for tax purposes under the following Act(s) (see Notices Regarding Land |
| 202 | Use Restrictions): |
| 203 | ☐ Farmland and Forest Land Assessment Act (Clean and Green Program; Act 319 of 1974; 72 P.S. § 5490.1 et seq.) |
| 204 | ☐ Open Space Act (Act 442 of 1967; 32 P.S. § 5001 et seq.) |
| 205 | ☐ Agricultural Area Security Law (Act 43 of 1981; 3 P.S. §901 et seq.) |
| 206 | ☐ Other |
| 207 | (F) Seller represents that, as of the date Seller signed this Agreement, no public improvement, condominium or homeowner associa- |
| 208 | tion assessments have been made against the Property which remain unpaid, and that no notice by any government or public |
| 209 | authority has been served upon Seller or anyone on Seller's behalf, including notices relating to violations of zoning, housing, |
| 210 | building, safety or fire ordinances that remain uncorrected, and that Seller knows of no condition that would constitute a viola- |
| 211 | tion of any such ordinances that remain uncorrected, unless otherwise specified here: |
| 212 | |
| 213 | (G) Seller knows of no other potential notices (including violations) and/or assessments except as follows: |
| 214 | |
| 215 | (H) Access to a public road may require issuance of a highway occupancy permit from the Department of Transportation. |
| 216 | **11. WAIVER OF CONTINGENCIES (9-05)** |
| 217 | If this Agreement is contingent on Buyer's right to inspect and/or repair the Property, or to verify insurability, environmental |
| 218 | conditions, boundaries, certifications, zoning classification or use, or any other information regarding the Property, Buyer's |
| 219 | failure to exercise any of Buyer's options within the times set forth in this Agreement is a WAIVER of that contingency and |
| 220 | Buyer accepts the Property and agrees to the RELEASE in Paragraph 25 of this Agreement. |
| 221 | **12. INSPECTIONS (1-10) (See Notices Regarding Property and Environmental Inspections)** |
| 222 | (A) Rights and Responsibilities |
| 223 | 1. Seller will provide access to insurers' representatives and, as may be required by this Agreement or by mortgage lender(s), to |
| 224 | surveyors, municipal officials, appraisers and inspectors. All parties and their real estate licensee(s) may attend any inspections. |
| 225 | 2. Buyer may make a pre-settlement walk-through inspection of the Property. Buyer's right to this inspection is not waived by |
| 226 | any other provision of this Agreement. |
| 227 | 3. Seller will have heating and all utilities (including fuel(s)) on for all inspections/appraisals. |
| 228 | 4. All inspectors, including home inspectors, are authorized by Buyer to provide a copy of any inspection Report to Broker for Buyer. |
| 229 | 5. Seller has the right, upon request, to receive a free copy of any inspection Report from the party for whom it was prepared. |
| 230 | (B) Buyer waives or elects at Buyer's expense to have the following Inspections, certifications, and investigations (referred to as |
| 231 | "Inspection" or "Inspections") performed by professional contractors, home inspectors, engineers, architects and other properly |
| 232 | licensed or otherwise qualified professionals. If the same inspector is inspecting more than one system, the inspector must com- |
| 233 | ply with the Home Inspection Law. (See Notice Regarding the Home Inspection Law) |
| 234 | (C) For elected Inspection(s), Buyer will, within the Contingency Period(s) stated in Paragraph 13(A), complete Inspections, obtain any |
| 235 | Inspection Reports or results (referred to as "Report" or "Reports"), and accept the Property, terminate this Agreement, or submit a |
| 236 | Written Corrective Proposal(s) to Seller, according to the terms of Paragraph 13(B). |

| 237 | | **Home/Property Inspections and Environmental Hazards (mold, etc.)** | |
|---|---|---|---|
| 238 | Elected | Buyer may conduct an inspection of the Property's structural components; roof; exterior windows and exterior | Waived |
| 239 | / | doors; exterior siding, Exterior Insulation and Finish Systems, fascia, gutters and downspouts; swimming pools, hot | / |
| 240 | | tubs and spas; appliances; electrical systems; interior and exterior plumbing; public sewer systems; heating and cool- | |
| 241 | | ing systems; water penetration; electromagnetic fields; wetlands and flood plain delineation; structure square | |
| 242 | | footage; mold and other environmental hazards (e.g., fungi, indoor air quality, asbestos, underground storage tanks, | |
| 243 | | etc.); and any other items Buyer may select. If Buyer elects to have a home inspection of the Property, as defined in | |
| 244 | | the Home Inspection Law, the home inspection must be performed by a full member in good standing of a national | |
| 245 | | home inspection association, or a person supervised by a full member of a national home inspection association, in | |
| 246 | | accordance with the ethical standards and code of conduct or practice of that association, or by a properly licensed | |
| 247 | | or registered engineer or architect. (See Notice Regarding the Home Inspection Law) | |
| 248 | | **Wood Infestation** | |
| 249 | Elected | Buyer may obtain a written "Wood-Destroying Insect Infestation Inspection Report" from an inspector certified as | Waived |
| 250 | / | a wood-destroying pests pesticide applicator and will deliver it and all supporting documents and drawings provid- | / |
| 251 | | ed by the inspector to Seller. The Report is to be made satisfactory to and in compliance with applicable laws, mort- | |
| 252 | | gage lender requirements, and/or Federal Insuring and Guaranteeing Agency requirements. The Inspection is to be | |
| 253 | | limited to all readily-visible and accessible areas of all structures on the Property, except fences. If the Inspection | |
| 254 | | reveals active infestation(s), Buyer, at Buyer's Expense, may obtain a Proposal from a wood-destroying pests pes- | |
| 255 | | ticide applicator to treat the Property. If the Inspection reveals damage from active or previous infestation(s), Buyer | |
| 256 | | may obtain a written Report from a professional contractor, home inspector or structural engineer that is limited to | |
| 257 | | structural damage to the Property caused by wood-destroying organisms and a Proposal to repair the Property. | |

263 Buyer Initials: RLR / JM.   ASR Page 5 of 11   Seller Initials: _____
Revised 1/12

| | | | |
|---|---|---|---|
| 258 | | **Water Services** | |
| 259<br>260<br>261<br>262 | Elected<br>/ | Buyer may obtain an Inspection of the quality and quantity of the water system from a properly licensed or otherwise qualified water/well testing company. If and as required by the inspection company, Seller, at Seller's expense, will locate and provide access to the on-site (or individual) water system. Seller will restore the Property to its previous condition, at Seller's expense, prior to settlement. | Waived<br>/ |
| 264 | | **Radon** | |
| 265<br>266<br>267 | Elected<br>/ | Buyer may obtain a radon test of the Property from a certified inspector. The U.S. Environmental Protection Agency (EPA) advises corrective action if the average annual exposure to radon is equal to or higher than 0.02 working levels or 4 picoCuries/liter (4pCi/L). | Waived<br>/ |
| 268 | | **On-Lot Sewage (If Applicable)** | |
| 269<br>270<br>271<br>272<br>273 | Elected<br>/ | Buyer may obtain an Inspection of the individual on-lot sewage disposal system from a qualified, professional inspector. If and as required by the inspection company, Seller, at Seller's expense, will locate, provide access to, and empty the individual on-lot sewage disposal system. Seller will restore the Property to its previous condition, at Seller's expense, prior to settlement. See paragraph 13(C) for more information regarding the Individual On-lot Sewage Inspection Contingency. | Waived<br>/ |
| 274 | | **Property Insurance** | |
| 275<br>276<br>277<br>278 | Elected<br>/ | Buyer may determine the insurability of the Property by making application for property and casualty insurance for the Property to a responsible insurer. Broker for Buyer, if any, otherwise Broker for Seller, may communicate with the insurer to assist in the insurance process. If the Property is located in a flood plain, Buyer may be required to carry flood insurance at Buyer's expense, which may need to be ordered 14 days or more prior to Settlement Date. | Waived<br>/ |
| 279 | | **Property Boundaries** | |
| 280<br>281<br>282<br>283<br>284 | Elected<br>/ | Buyer may engage the services of a surveyor, title abstractor, or other qualified professional to assess the legal description, certainty and location of boundaries and/or quantum of land. Most Sellers have not had the Property surveyed as it is not a requirement of property transfer in Pennsylvania. Any fences, hedges, walls and other natural or constructed barriers may or may not represent the true boundary lines of the Property. Any numerical representations of size of property are approximations only and may be inaccurate. | Waived<br>/ |
| 285 | | **Deeds, Restrictions and Zoning** | |
| 286<br>287<br>288<br>289 | Elected<br>/ | Buyer may investigate easements, deed and use restrictions (including any historic preservation restrictions or ordinances) that apply to the Property and review local zoning ordinances. Buyer may verify that the present use of the Property (such as in-law quarters, apartments, home office, day care) is permitted and may elect to make the Agreement contingent upon an anticipated use. Present use: | Waived<br>/ |
| 290 | | **Lead-Based Paint Hazards (For Properties prior to 1978 only)** | |
| 291<br>292<br>293<br>294<br>295<br>296<br>297<br>298 | Elected<br>/ | Before Buyer is obligated to purchase a residential dwelling built prior to 1978, Buyer has the option to conduct a risk assessment and/or inspection of the Property for the presence of lead-based paint and/or lead-based paint hazards unless Buyer waives that right. **Regardless of whether this inspection is elected or waived, the Residential Lead-Based Paint Hazard Reduction Act requires a Seller of property built prior to 1978 to provide the Buyer with an EPA-approved lead hazards information pamphlet titled Protect Your Family from Lead in Your Home, along with a separate form, attached to this Agreement, disclosing Seller's knowledge of lead-based paint hazards and any lead-based paint records regarding the Property.** (See Notices Regarding Residential Lead-Based Paint Hazard Reduction Act) | Waived<br>/ |
| 299 | | **Other:** | |
| 300<br>301<br>302 | Elected<br>/ | | Waived<br>/ |

303 The Inspections elected above do not apply to the following existing conditions and/or items: _____
304 _____
305 _____

306 **13. INSPECTION CONTINGENCY (1-10)**
307 (A) The Contingency Period is _____ days (10 if not specified) from the Execution Date of this Agreement for each Inspection elected
308 in Paragraph 12(C), except the following:

| 309<br>310<br>311<br>312<br>313 | **Inspection(s):** | **Contingency Period** | **Days** |
|---|---|---|---|
| | | | |

314 (B) Except as stated in Paragraph 13(C), if the result of any Inspection elected in Paragraph 12(C) is unsatisfactory to Buyer, Buyer
315 will, **within the stated Contingency Period:**
316 1. Accept the Property with the information stated in the Report(s) and agree to the RELEASE in Paragraph 25 of this Agreement, OR
317 2. **Terminate this Agreement** by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
318 Paragraph 23 of this Agreement, OR
319 3. **Present the Report(s) to Seller with a Written Corrective Proposal ("Proposal") listing corrections and/or credits desired by Buyer.**
320 The Proposal may, but is not required to, include the name(s) of a properly licensed or qualified professional(s) to perform the corrections
321 requested in the Proposal, provisions for payment, including retests, and a projected date for completion of the corrections.
322 Buyer agrees that Seller will not be held liable for corrections that do not comply with mortgage lender or governmental
323 requirements if performed in a workmanlike manner according to the terms of Buyer's Proposal.

Case 2:14-cv-00999-NIQA   Document 23-8   Filed 07/31/14   Page 9 of 15

324 Buyer Initials: RxR

ASR Page 6 of 11
Revised 1/12

31

Seller Initials: 

325    a. No later than _____ days (5 if not specified) from the end of the Contingency Period(s), Seller will inform Buyer in
326       writing that Seller will:
327          (1) Satisfy all the terms of Buyer's Proposal(s), OR
328          (2) Not satisfy all the terms of Buyer's Proposal(s), OR
329    b. If Seller agrees to satisfy the terms of Buyer's Proposal, Buyer accepts the Property and agrees to the RELEASE in Paragraph
330       25 of this Agreement.
331    c. Within _____ days (2 if not specified) of receipt of written notification that Seller will not satisfy all terms of Buyer's Proposal, or
332       the time stated in paragraph 13(B)(3)(a) if Seller fails to choose any option in writing, whichever occurs first, Buyer will:
333          (1) Accept the Property with the information stated in the Report(s) and agree to the RELEASE in Paragraph 25 of this
334             Agreement, OR
335          (2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the
336             terms of Paragraph 23 of this Agreement, OR
337          (3) Enter into a mutually acceptable written agreement with Seller, providing for any repairs or improvements to the
338             Property and/or any credit to Buyer at settlement, as acceptable to the mortgage lender, if any.
339       If Buyer fails to respond within the time stated in Paragraph 13(B)(3)(c) or fails to terminate this Agreement by
340       written notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in
341       Paragraph 25 of this Agreement.
342 (C) If a Report reveals the need to expand or replace the existing individual on-lot sewage disposal system, Seller may, within
343    _____ days (25 if not specified) of receiving the Report, submit a Proposal to Buyer. The Proposal will include, but not be limited to, the
344    name of the company to perform the expansion or replacement; provisions for payment, including retests; and a projected completion
345    date for corrective measures. Within _____ DAYS of receiving Seller's Proposal, or if no Proposal is provided within the
346    stated time, Buyer will notify Seller in writing of Buyer's choice to:
347    1. Agree to the terms of the Proposal, accept the Property and agree to the RELEASE in Paragraph 25 of this Agreement, OR
348    2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
349       Paragraph 23 of this Agreement, OR
350    3. Accept the Property and the existing system and agree to the RELEASE in Paragraph 25 of this Agreement. If required by any
351       mortgage lender and/or any governmental authority, Buyer will correct the defects before settlement or within the time required
352       by the mortgage lender and/or governmental authority, at Buyer's sole expense, with permission and access to the Property given
353       by Seller, which may not be unreasonably withheld. If Seller denies Buyer permission and/or access to correct the defects, Buyer
354       may, within __5__ DAYS of Seller's denial, terminate this Agreement by written notice to Seller, with all deposit monies returned
355       to Buyer according to the terms of Paragraph 23 of this Agreement.
356    If Buyer fails to respond within the time stated in Paragraph 13(C) or fails to terminate this Agreement by written notice
357    to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 25 of this Agreement.
358 **14. NOTICES, ASSESSMENTS AND MUNICIPAL REQUIREMENTS (1-10)**
359 (A) In the event any notices, including violations, and/or assessments are received after Seller has signed this Agreement and before
360    settlement, Seller will within __5__ DAYS of receiving the notices and/or assessments provide a copy of the notices and/or assess-
361    ments to Buyer and will notify Buyer in writing that Seller will:
362    1. Fully comply with the notices and/or assessments, at Seller's expense, before settlement. If Seller fully complies with the
363       notices and/or assessments, Buyer accepts the Property and agrees to the RELEASE in Paragraph 25 of this Agreement, OR
364    2. Not comply with the notices and/or assessments. If Seller chooses not to comply with the notices and/or assessments, or fails
365       within the stated time to notify Buyer whether Seller will comply, Buyer will notify Seller in writing within __5__ DAYS
366       that Buyer will:
367       a. Comply with the notices and/or assessments at Buyer's expense, accept the Property, and agree to the RELEASE in
368          Paragraph 25 of this Agreement, OR
369       b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
370          Paragraph 23 of this Agreement.
371    If Buyer fails to respond within the time stated in Paragraph 14(A)(2) or fails to terminate this Agreement by written notice
372    to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 25 of this Agreement.
373 (B) If required by law, within __30__ DAYS from the Execution Date of this Agreement, but in no case later than __15__ DAYS prior
374    to Settlement Date, Seller will order at Seller's expense a certification from the appropriate municipal department(s) disclosing
375    notice of any uncorrected violations of zoning, housing, building, safety or fire ordinances and/or a certificate permitting occu-
376    pancy of the Property. If Buyer receives a notice of any required repairs/improvements, Buyer will promptly deliver a copy of
377    the notice to Seller.
378    1. Within __5__ DAYS of receiving notice from the municipality that repairs/improvements are required, Seller will deliver a
379       copy of the notice to Buyer and notify Buyer in writing that Seller will:
380       a. Make the required repairs/improvements to the satisfaction of the municipality. If Seller makes the required
381          repairs/improvements, Buyer accepts the Property and agrees to the RELEASE in Paragraph 25 of this Agreement, OR
382       b. Not make the required repairs/improvements. If Seller chooses not to make the required repairs/improvements, Buyer will
383          notify Seller in writing within 5 DAYS that Buyer will:
384          (1) Make the repairs/improvements at Buyer's expense, with permission and access to the Property given by Seller, which
385             will not be unreasonably withheld, OR
386          (2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms
387             of Paragraph 23 of this Agreement.
388    If Buyer fails to respond within the time stated in Paragraph 14(B)(1)(b) or fails to terminate this Agreement by
389    written notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph
390    25 of this Agreement, and Buyer accepts the responsibility to perform the repairs/improvements according to the
391    terms of the notice provided by the municipality.

```
393      2. If Seller denies Buyer permission to make the required repairs/improvements, or does not provide Buyer access before
394         Settlement Date to make the required repairs/improvements, Buyer may, within      5      DAYS, terminate this Agreement by
395         written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 23 of this Agreement.
396      3. If repairs/improvements are required and Seller fails to provide a copy of the notice to Buyer as required in this Paragraph, Seller
397         will perform all repairs/improvements as required by the notice at Seller's expense. Paragraph 14(B)(3) will survive settlement.
```

398 15. CONDOMINIUM/PLANNED COMMUNITY (HOMEOWNER ASSOCIATIONS) RESALE NOTICE (1-10)
399     Property is NOT a Condominium or part of a Planned Community unless checked below.
400     ☐ CONDOMINIUM. The Property is a unit of a condominium that is primarily run by a unit owners' association. Section 3407 of the
401        Uniform Condominium Act of Pennsylvania (see Notice Regarding Condominiums and Planned Communities) requires Seller to
402        furnish Buyer with a Certificate of Resale and copies of the condominium declaration (other than plats and plans), the bylaws and
403        the rules and regulations of the association.
404     ☐ PLANNED COMMUNITY (HOMEOWNER ASSOCIATION). The Property is part of a planned community as defined by the
405        Uniform Planned Community Act (see Notice Regarding Condominiums and Planned Communities). Section 5407(a) of the Act
406        requires Seller to furnish Buyer with a copy of the Declaration (other than plats and plans), the bylaws, the rules and regulations
407        of the association, and a Certificate containing the provisions set forth in section 5407(a) of the Act.
408     THE FOLLOWING APPLIES TO PROPERTIES THAT ARE PART OF A CONDOMINIUM OR A PLANNED COMMUNITY.
409     (A) Within    15    DAYS from the Execution Date of this Agreement, Seller, at Seller's expense, will request from the association a
410        Certificate of Resale and any other documents necessary to enable Seller to comply with the relevant Act. The Act provides that
411        the association is required to provide these documents within 10 days of Seller's request.
412     (B) Seller will promptly deliver to Buyer all documents received from the association. Under the Act, Seller is not liable to Buyer for
413        the failure of the association to provide the Certificate in a timely manner or for any incorrect information provided by the
413        association in the Certificate.
415     (C) The Act provides that Buyer may declare this Agreement VOID at any time before Buyer receives the association documents and
416        for 5 days after receipt, OR until settlement, whichever occurs first. Buyer's notice to Seller must be in writing; upon Buyer
417        declaring this Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 23 of this
418        Agreement.
419     (D) If the association has the right to buy the Property (right of first refusal), and the association exercises that right, Seller will reim-
420        burse Buyer for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of the Agreement,
421        and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation;
422        (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees
423        and charges paid in advance to mortgage lender.

424 16. TITLES, SURVEYS AND COSTS (1-12)
425     (A) The Property will be conveyed with good and marketable title that is insurable by a reputable title insurance company at the regular
426        rates, free and clear of all liens, encumbrances, and easements, excepting however the following: existing deed restrictions;
427        historic preservation restrictions or ordinances; building restrictions; ordinances; easements of roads; easements visible upon the
428        ground; easements of record; and privileges or rights of public service companies, if any.
429     (B) Buyer will pay for the following: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation;
430        (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees
431        and charges paid in advance to mortgage lender; (4) Buyer's customary settlement costs and accruals.
432     (C) Any survey or surveys required by the title insurance company or the abstracting company for preparing an adequate legal
433        description of the Property (or the correction thereof) will be obtained and paid for by Seller. Any survey or surveys desired by
434        Buyer or required by the mortgage lender will be obtained and paid for by Buyer.
435     (D) If Seller is unable to give good and marketable title that is insurable by a reputable title insurance company at the regular rates, as
436        specified in Paragraph 16(A), Buyer may terminate this Agreement by written notice to Seller, with all deposit monies returned to
437        Buyer according to the terms of Paragraph 23 of this Agreement. Upon termination, Seller will reimburse Buyer for any costs
438        incurred by Buyer for any inspections or certifications obtained according to the terms of this Agreement, and for those items specified
439        in Paragraph 16(B) items (1), (2), (3) and in Paragraph 16(C).
440     (E) Oil, gas, mineral, or other rights of this Property may have been previously conveyed or leased, and Sellers make no representation about
441        the status of those rights unless indicated elsewhere in this Agreement.
442        ☐ Oil, Gas, and Mineral Rights Addendum (PAR Form OGM) is attached.
443     (F) COAL NOTICE (Where Applicable)
444        THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHTS OF SUPPORT UNDERNEATH
445        THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL
446        RIGHT TO REMOVE ALL SUCH COAL AND IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE,
447        BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. (This notice is set forth in the manner provided in Section 1 of the Act of
448        July 17, 1957, P.L. 984.) "Buyer acknowledges that he may not be obtaining the right of protection against subsidence resulting
449        from coal mining operations, and that the property described herein may be protected from damage due to mine subsidence by a
450        private contract with the owners of the economic interests in the coal. This acknowledgement is made for the purpose of com-
451        plying with the provisions of Section 14 of the Bituminous Mine Subsidence and the Land Conservation Act of April 27, 1966."
452        Buyer agrees to sign the deed from Seller which deed will contain the aforesaid provision.
453     (G) The Property is not a "recreational cabin" as defined in the Pennsylvania Construction Code Act unless otherwise stated here (see
454        Notice Regarding Recreational Cabins): _____

455 Buyer Initials: _____/_____         ASR Page 8 of 11         Seller Initials: _____/_____
                                        Revised 1/12

**17. MAINTENANCE AND RISK OF LOSS (1-10)**

(A) Seller will maintain the Property, grounds, fixtures and personal property specifically listed in this Agreement in its present condition, normal wear and tear excepted.

(B) If any system or appliance included in the sale of Property fails before settlement, Seller will:
 1. Repair or replace the failed system or appliance before settlement, OR
 2. Provide prompt written notice to Buyer of Seller's decision to:
  a. Credit Buyer at settlement for the fair market value of the failed system or appliance, as acceptable to the mortgage lender, if any, OR
  b. Not repair or replace the failed system or appliance, and not credit Buyer at settlement for the fair market value of the failed system or appliance.
 3. If Seller does not repair or replace the failed system or appliance or agree to credit Buyer for its fair market value, or if Seller fails to notify Buyer of Seller's choice, Buyer will notify Seller in writing within  __5__  DAYS or before Settlement Date, whichever is earlier, that Buyer will:
  a. Accept the Property and agree to the RELEASE in Paragraph 24 of this Agreement, OR
  b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 23 of this Agreement.

If Buyer fails to respond within the time stated in Paragraph 17(B)(3) or fails to terminate this Agreement by written notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 25 of this Agreement.

(C) Seller bears the risk of loss from fire or other casualties until settlement. If any property included in this sale is destroyed and not replaced prior to settlement, Buyer will:
 1. Accept the Property in its then current condition together with the proceeds of any insurance recovery obtainable by Seller, OR
 2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 23 of this Agreement.

**18. HOME WARRANTIES (1-10)**

At or before settlement, either party may purchase a home warranty for the Property from a third-party vendor. Buyer and Seller understand that a home warranty for the Property does not alter any disclosure requirements of Seller, will not cover or warrant any pre-existing defects of the Property, and will not alter, waive or extend any provisions of this Agreement regarding inspections or certifications that Buyer has elected or waived as part of this Agreement. Buyer and Seller understand that a broker who recommends a home warranty may have a business relationship with the home warranty company that provides a financial benefit to the broker.

**19. RECORDING (9-05)**

This Agreement will not be recorded in the Office of the Recorder of Deeds or in any other office or place of public record. If Buyer causes or permits this Agreement to be recorded, Seller may elect to treat such act as a default of this Agreement.

**20. ASSIGNMENT (1-10)**

This Agreement is binding upon the parties, their heirs, personal representatives, guardians and successors, and to the extent assignable, on the assigns of the parties hereto. Buyer will not transfer or assign this Agreement without the written consent of Seller unless otherwise stated in this Agreement. Assignment of this Agreement may result in additional transfer taxes.

**21. GOVERNING LAW, VENUE AND PERSONAL JURISDICTION (9-05)**

(A) The validity and construction of this Agreement, and the rights and duties of the parties, will be governed in accordance with the laws of the Commonwealth of Pennsylvania.

(B) The parties agree that any dispute, controversy or claim arising under or in connection with this Agreement or its performance by either party submitted to a court shall be filed exclusively by and in the state or federal courts sitting in the Commonwealth of Pennsylvania.

**22. REPRESENTATIONS (1-10)**

(A) All representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Brokers, their licensees, employees, officers or partners are not a part of this Agreement unless expressly incorporated or stated in this Agreement. This Agreement contains the whole agreement between Seller and Buyer, and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning this sale. This Agreement will not be altered, amended, changed or modified except in writing executed by the parties.

(B) Unless otherwise stated in this Agreement, Buyer has inspected the Property (including fixtures and any personal property specifically listed herein) before signing this Agreement or has waived the right to do so, and agrees to purchase the Property IN ITS PRESENT CONDITION, subject to inspection contingencies elected in this Agreement. Buyer acknowledges that Brokers, their licensees, employees, officers or partners have not made an independent examination or determination of the structural soundness of the Property, the age or condition of the components, environmental conditions, the permitted uses, nor of conditions existing in the locale where the Property is situated; nor have they made a mechanical inspection of any of the systems contained therein.

(C) Any repairs required by this Agreement will be completed in a workmanlike manner.

(D) Broker(s) have provided or may provide services to assist unrepresented parties in complying with this Agreement.

**23. DEFAULT, TERMINATION AND RETURN OF DEPOSITS (1-10)**

(A) Where Buyer terminates this Agreement pursuant to any right granted by this Agreement, Buyer will be entitled to a return of all deposit monies paid on account of Purchase Price pursuant to the terms of Paragraph 23(B), and this Agreement will be VOID. Termination of this Agreement may occur for other reasons giving rise to claims by Buyer and/or Seller for the deposit monies.

(B) Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to determine who is entitled to the deposit monies when settlement does not occur. Broker can only release the deposit monies:
 1. If this Agreement is terminated prior to settlement and there is no dispute over entitlement to the deposit monies. A written agreement signed by both parties is evidence that there is no dispute regarding deposit monies.

Buyer Initials: _RCR_ / _gav._   ASR Page 9 of 11   Revised 1/12   Seller Initials: ____

524    2. If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, direct-
525       ing Broker how to distribute some or all of the deposit monies.
526    3. According to the terms of a final order of court.
527    4. According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the
528       deposit monies if there is a dispute between the parties that is not resolved. (See Paragraph 23(C))
529 (C) Buyer and Seller agree that if there is a dispute over the entitlement to deposit monies that is unresolved    365 days after
530      the Settlement Date stated in Paragraph 4(A), or any written extensions thereof, the Broker holding the deposit monies will, with-
531      in 30 days of receipt of Buyer's written request, distribute the deposit monies to Buyer unless the Broker is in receipt of verifi-
532      able written notice that the dispute is the subject of litigation. If Broker has received verifiable written notice of litigation prior
533      to the receipt of Buyer's request for distribution, Broker will continue to hold the deposit monies until receipt of a written distribution
534      agreement between Buyer and Seller or a final court order. Buyer and Seller are advised to initiate litigation for any portion
535      of the deposit monies prior to any distribution made by Broker pursuant to this paragraph. Buyer and Seller agree that the
536      distribution of deposit monies based upon the passage of time does not legally determine entitlement to deposit monies, and that
537      the parties maintain their legal rights to pursue litigation even after a distribution is made.
538 (D) Buyer and Seller agree that Broker who holds or distributes deposit monies pursuant to the terms of Paragraph 23 or Pennsylvania
539      law will not be liable. Buyer and Seller agree that if any Broker or affiliated licensee is named in litigation regarding deposit
540      monies, the attorneys' fees and costs of the Broker(s) and licensee(s) will be paid by the party naming them in litigation.
541 (E) Seller has the option of retaining all sums paid by Buyer, including the deposit monies, should Buyer:
542    1. Fail to make any additional payments as specified in Paragraph 2, OR
543    2. Furnish false or incomplete information to Seller, Broker(s), or any other party identified in this Agreement concerning
544       Buyer's legal or financial status, OR
545    3. Violate or fail to fulfill and perform any other terms or conditions of this Agreement.
546 (F) Unless otherwise checked in Paragraph 23(G), Seller may elect to retain those sums paid by Buyer, including deposit monies:
547    1. On account of purchase price, OR
548    2. As monies to be applied to Seller's damages, OR
549    3. As liquidated damages for such default.
550 (G) ☒ **SELLER IS LIMITED TO RETAINING SUMS PAID BY BUYER, INCLUDING DEPOSIT MONIES, AS LIQUIDATED**
551      **DAMAGES.**
552 (H) If Seller retains all sums paid by Buyer, including deposit monies, as liquidated damages pursuant to Paragraph 23(F) or (G),
553      Buyer and Seller are released from further liability or obligation and this Agreement is VOID.
554 (I) Brokers and licensees are not responsible for unpaid deposits.

555 **24. MEDIATION (1-10)**
556 ~~Buyer and Seller will submit all disputes or claims that arise from this Agreement, including disputes and claims over deposit monies,~~
557 ~~to mediation. Mediation will be conducted in accordance with the Rules and Procedures of the Home Sellers/Home Buyers Dispute~~
558 ~~Resolution System, unless it is not available, in which case Buyer and Seller will mediate according to the terms of the mediation sys-~~
559 ~~tem offered or endorsed by the local Association of REALTORS®. Mediation fees, contained in the mediator's fee schedule, will be~~
560 ~~divided equally among the parties and will be paid before the mediation conference. This mediation process must be concluded before~~
561 ~~any party to the dispute may initiate legal proceedings in any courtroom, with the exception of filing a summons if it is necessary to~~
562 ~~stop any statute of limitations from expiring. Any agreement reached through mediation and signed by the parties will be binding (see~~
563 ~~Notice Regarding Mediation). Any agreement to mediate disputes or claims arising from this Agreement will survive settlement.~~

564 **25. RELEASE (9-05)**
565      Buyer releases, quit claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOYEES and any
566      OFFICER or PARTNER of any one of them and any other PERSON, FIRM or CORPORATION who may be liable by or
567      through them, from any and all claims, losses or demands, including, but not limited to, personal injury and property dam-
568      age and all of the consequences thereof, whether known or not, which may arise from the presence of termites or other wood-
569      boring insects, radon, lead-based paint hazards, mold, fungi or indoor air quality, environmental hazards, any defects in the
570      individual on-lot sewage disposal system or deficiencies in the on-site water service system, or any defects or conditions on the
571      Property. Should Seller be in default under the terms of this Agreement or in violation of any Seller disclosure law or regula-
572      tion, this release does not deprive Buyer of any right to pursue any remedies that may be available under law or equity. This
573      release will survive settlement.

574 **26. REAL ESTATE RECOVERY FUND (9-05)**
575      A Real Estate Recovery Fund exists to reimburse any persons who have obtained a final civil judgment against a Pennsylvania real
576      estate licensee (or a licensee's affiliates) owing to fraud, misrepresentation, or deceit in a real estate transaction and who have been
577      unable to collect the judgment after exhausting all legal and equitable remedies. For complete details about the Fund, call (717) 783-
578      3658 or (800) 822-2113 (within Pennsylvania) and (717) 783-4854 (outside Pennsylvania).

579 **27. COMMUNICATIONS WITH BUYER AND/OR SELLER (1-10)**
580      Wherever this Agreement contains a provision that requires or allows communication/delivery to a Buyer, that provision shall be satis-
581      fied by communication/delivery to the Broker for Buyer, if any, except for documents required to be delivered pursuant to
582      Paragraph 15. If there is no Broker for Buyer, those provisions may be satisfied only by communication/delivery being made direct-
583      ly to the Buyer, unless otherwise agreed to by the parties. Wherever this Agreement contains a provision that requires or allows com-
584      munication/delivery to a Seller, that provision shall be satisfied by communication/delivery to the Broker for Seller, if any. If there is
585      no Broker for Seller, those provisions may be satisfied only by communication/delivery being made directly to the Seller, unless other-
586      wise agreed to by the parties.

587 Buyer Initials: _RLR_ / _jpr._      ASR Page 10 of 11      Seller Initials: _____

Revised 1/12

588 28. SPECIAL CLAUSES (1-10)
589 (A) The following are part of this Agreement if checked:
590 ☐ Sale & Settlement of Other Property Contingency Addendum (PAR Form SSP)
591 ☐ Sale & Settlement of Other Property Contingency with Right to Continue Marketing Addendum (PAR Form SSP-CM)
592 ☐ Settlement of Other Property Contingency Addendum (PAR Form SOP)
593 ☐ Short Sale Addendum to Agreement of Sale (PAR Form SHS)
594 ☐ Appraisal Contingency Addendum (PAR Form ACA)
595 ☐
596 ☐
597 ☐
598
599
600
601
602
603
604
605
606
607
608 (B) Additional Terms:
609 Legal Representation: The Parties hereto each had the time, opportunity, and monies to retain independent counsel to review this Agreement prior
610 to execution and the fact that counsel for one of the parties drafted this Agreement shall not cause this Agreement to be construed against
611 such party as this Agreement was negotiated with the assistance of such counsel.
612 Seller Counsel is Lundy Beldecos & Milby, PC, c/o Stuart R. Lundy, Esquire: slundy@lbmlaw.com:610-668-0777.
613 A copy of all notices to Buyer shall be sent to Buyer Counsel. A copy of all notices to
614 Seller shall be sent to Seller Counsel.
615
616
617
618 Buyer and Seller acknowledge receipt of a copy of this Agreement at the time of signing.
619 This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original and which
620 counterparts together shall constitute one and the same Agreement of the Parties.
621 NOTICE TO PARTIES: WHEN SIGNED, THIS AGREEMENT IS A BINDING CONTRACT. Parties to this transaction are
622 advised to consult a Pennsylvania real estate attorney before signing if they desire legal advice.
623 Return of this Agreement, and any addenda and amendments, including return by electronic transmission, bearing the signatures
624 of all parties, constitutes acceptance by the parties.
625 ____ Buyer has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code
626 §35.336.
627 ____ Buyer has received a statement of Buyer's estimated closing costs before signing this Agreement.
628 ____ Buyer has read and understands the notices and explanatory information in this Agreement.
629 ____ Buyer has received a Seller's Property Disclosure Statement before signing this Agreement, if required by law
630 (see Information Regarding the Real Estate Seller Disclosure Law).
631 ____ Buyer has received the Deposit Money Notice (for cooperative sales when Broker for Seller is holding deposit
632 money) before signing this Agreement.
633 ____ Buyer has received the Lead-Based Paint Hazards Disclosure, which is attached to this Agreement of Sale, and
634 the pamphlet Protect Your Family from Lead in Your Home (for properties built prior to 1978)
635 BUYER _____ DATE _____
636 BUYER _____ DATE 11-10-12
637 BUYER _____ DATE 11-10-12
638 Seller has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code § 35.336.
639 Seller has received a statement of Seller's estimated closing costs before signing this Agreement.
640 Seller has read and understands the notices and explanatory information in this Agreement.
641 SELLER _____ DATE 6-15-12
642 SELLER _____ DATE 6-15-12

ALL THAT CERTAIN lot or piece of ground, Situate In the Township of Lower Merion, County of Montgomery, Commonwealth of Pennsylvania, described in accordance with a Final Subdivision of property of Charles A. Ernst, Jr., made by Yerkes Associates, Inc., Bryn Mawr, Pennsylvania, dated 7/10/1978 and last revised 2/26/1979, as follows, to wit

BEGINNING at a point on the title line in the bed of Fairview Road, a corner of Lot 4 as shown on said plan, thence along the title line in the bed of Fairview Road South 40 degrees 59 minutes East 20 feet to a monument (set) in line of lands now or late of Penn Valley Womens Club, thence leaving said road along said lands and along Lot 2, South 49 degrees 51 minutes West 350 feet to a point, thence still along Lot 2, South 62 degrees 51 minutes West 333.77 feet to a point in line of Lot 7, thence along same, North 43 degrees 12 minutes West 283.71 feet to a point, a corner of Lot 5, thence along Lot 5, North 49 degrees 1 minute East 360.03 feet to a point, a corner of Lot 4; thence along Lot 4, the two following courses and distances (1) South 40 degrees 59 minutes East 343.65 feet; and (2) North 49 degrees 51 minutes East 325.03 feet to the first mentioned point and place of beginning.

BEING shown as Lot No 3, No 50 Fairview Road on said plan

TOGETHER WITH AND UNDER AND SUBJECT to a certain Easement and Right-of-Way over a 12 foot by 150 foot portion of the above described lot or piece of ground for the benefit and use of the owners, tenants and occupiers of Lot No 4, as shown on the above described plan, in common with the owners, tenants and occupiers of the above described premises, Subject further to the responsibility of the owner of Lot No 4 to pay the cost of installation of so much of the said driveway as the owner of Lot No 4 uses in common with Lot No 3, and to the responsibility of the owner of Lot No. 4 to pay the proportionate share of the cost of maintenance and snow removal of said right-of-way; said easement and right-of-way is more fully described as follows

BEGINNING at a point on the title line in the bed of Fairview Road, said point being a common corner of Lots Numbered 3 and 4 on said plan, thence extending from the point of beginning along the title line in the bed of Fairview Road, South 40 degrees 59 minutes East 12 feet to a point, thence leaving the title line in the bed of Fairview Road and extending through Lot No 3 on said plan, the two following courses and distances (1) South 49 degrees 51 minutes West 150 feet to a point, and (2) North 40 degrees 09 minutes West 12 feet to a point, thence extending along Lot No 4 on said plan, North 49 degrees 51 minutes East 150 feet to the first mentioned point and place of beginning

ALSO SUBJECT to the continued operation and maintenance of the storm water management facilities

**Being** Parcel No 40-00-17395-007

**Being** No. 50 Fairview Road.

**Being** the same premises which **MAURI LIBRETT and MARTIN WEINTRAUB, as Trustees of the Revocable Intervivos Trust for the Benefit of Paula Librett (deceased),** by Deed dated on or about November 18, 2005 and E-Recorded on January 30, 2006 in the Montgomery County Recorder of Deeds Office under Document ID 2006012576 at B007F U055L 3 1101 conveyed unto **LESTER P. SCHAEVITZ and DIANE SCHAEVITZ, h/w.**