**EXHIBIT 24**

SPECTOR GADON & ROSEN
  A Professional Corporation
ALAN B. EPSTEIN, ESQUIRE
  I.D. NO. 02346
JENNIFER MYERS CHALAL, ESQUIRE
  I.D. NO. 77841
1635 MARKET STREET
SEVENTH FLOOR
PHILADELPHIA, PA 19103
(215) 241-8888

To the Within Defendant: You are hereby
notified to plead to the enclosed Complaint
within 20 days of service hereof or a default
judgment may be entered against you.

ATTORNEY FOR PLAINTIFF
SHELLEY ROMM, INC.

| | | |
|---|---|---|
| SHELLEY ROMM, INC. | : | |
| (f/k/a Lippincott, Inc.) | : | COURT OF COMMON PLEAS |
| 1436 Wesleys Run | : | PHILADELPHIA COUNTY |
| Gladwyne, Pennsylvania 19035 | : | |
| | : | TERM, 2008 |
|     v. | : | |
| | : | |
| LIPPINCOTT, LLC | : | |
| (f/k/a Fossicker Acquisition, LLC) | : | |
| 326 S. Juniper Street, 1st Floor | : | |
| Philadelphia, PA 19107 | : | |
|     and | : | |
| DAVID M. M. TAFFET | : | |
| 915 Montgomery Avenue, Suite 209 | : | |
| Narberth, Pennsylvania 19072 | : | COMMERCE PROGRAM |
|     and | : | |
| PLATYPUS MANAGEMENT, INC. | : | |
| 326 S. Juniper Street, 1st Floor | : | |
| Philadelphia, PA 19107 | : | |
|     and | : | |
| PARENTE RANDOLPH, LLC | : | NO. |
| One Liberty Place, Suite 4500 | : | |
| 1650 Market Street | : | |

## COMPLAINT
## JURY TRIAL DEMANDED

Plaintiff, Shelley Romm, Inc, claims of Defendants, Lippincott, LLC,

David M. M. Taffet, Platypus Management, Inc. and Parente Randolph, LLC a

sum in excess of Fifty Thousand Dollars ($50,000.00) in damages, upon causes of action whereof the following is a statement:

### THE PARTIES

1.      Plaintiff Shelley Romm, Inc. (f/k/a Lippincott, Inc.) ("Shelley Romm") is a Pennsylvania business corporation with its principal place of business at 1436 Wesleys Run, Gladwyne, Pennsylvania 19035.

2.      Defendant, Lippincott, LLC (f/k/a Fossiker Acquisition, LLC) ("Lippincott") is a business entity incorporated under the laws of the Commonwealth of Pennsylvania and maintains its registered office at 326 Juniper Street, Philadelphia, Pennsylvania 19107.

3.      Defendant, David M. M. Taffet ("Taffet") is an individual who maintains his principal place of business at 915 Montgomery Avenue, Suite 209, Narberth, Pennsylvania 19072. Defendant Taffet was, at all times relevant hereto, the President and majority/substantial shareholder of both Defendants Lippincott and Platypus Management, Inc. and acted under the color of those positions for the purpose of his own financial benefit.

4.      Defendant, Platypus Management, Inc. ("Platypus") is a business entity incorporated under the laws of the Commonwealth of Pennsylvania and maintains its registered office at 326 Juniper Street, Philadelphia, Pennsylvania 19107. Defendant Platypus was, at the time of the sale of the subject Company to Lippincott, the Executive Manager of Defendant Lippincott and acted on its behalf.

2

5.    Defendant, Parente Randolph, LLC ("Parente Randolph") is a regional accounting firm with its principal place of business at One Liberty Place, Suite 4500, 1650 Market Street, Philadelphia, PA 19103.  Defendant Parente Randolph prepared for and presented to Defendant Lippincott the attached Independent Auditors Report ("Report") dated June 2, 2008.

## STATEMENT OF CONTROLLING FACTS

6.    Prior to January 2, 2007 and since 1990, Plaintiff Shelley Romm (then known as Lippincott, Inc.) operated a business that bought and recycled gold, platinum, diamonds and fine jewelry items from customers throughout the world, employing national television, internet and other advertising mediums for that purpose.  Purchased below immediate disposable value, the products were sold, following a twelve-day hold period, to precious metal refineries, wholesale jewelry dealers and over the internet.

7.    On January 2, 2007, the purchase of the tangible and intangible assets of Plaintiff Shelley Romm (then known as Lippincott, Inc.) was consummated by the payment of $12,000,000 by Defendant Lippincott, LLC (then known as Fossicker Acquisition, LLC ("Fossicker")) to Plaintiff Shelley Romm in accordance with the terms of the Asset Purchase Agreement dated November 3, 2006 between Plaintiff Shelley Romm and Defendant Lippincott.  That Agreement provided for the lump sum payment of $10,000,000 and the delivery at the closing of a non-negotiable promissory note for the balance of $2,000,000.

3

8.    In accordance with the terms of the Agreement, on January 2, 2007, Defendant Taffet, in his capacity as the President of Defendant Platypus, executed the required Non-Negotiable Promissory Note ("Note") [attached hereto as Exhibit "A"] that requires the payment of $2,000,000 "in four (4) equal, annual installments of $500,000 each." The Note further mandates that "[e]ach installment of principal shall be paid promptly after the completion of Maker's audited financial statements for each calendar year following the date of this Promissory Note."

9.    The Note also provides for alternative payments based upon the availability (diminished or increased) of cash at the end of any calendar year:

> Notwithstanding anything in this Promissory Note, in the event that Maker's Net Available Cash (defined below) for any period in which any principal payment is payable does not exceed the amount of the principal payment due in respect of such period, (i) Maker shall make a principal payment in respect of such period equal to such lesser amount (and such failure to pay the amount otherwise due in full at such time shall not constitute an Event of Default hereunder) and (ii) the principal payment duo date for the difference between the amount otherwise ˙due and the amount paid shall be extended, after the last due date for a principal payment hereunder . (as such date may have been extended in accordance with this paragraph or otherwise), by that number of months that is proportionate (based on a 12 month period) to the unpaid difference and the principal amount otherwise due (e.g., if, based on its Net Available Cash, Maker paid $375,000 in a year in which one of the $500,000 principal payments were due, then the due date for the unpaid $125,000 in principal would be at the end of 3 months ($125,000/$500,000, or 1/4, constituting 3/12, or 3 months) after the last principal payment date). In the event that Maker's Net Available

4

> Cash for a period exceeds the principal payment due in respect of such period, Maker shall pay 25% of the excess over such principal payment as a prepayment of the unpaid principal balance.

Note, Exhibit A, at p. 2.

10.    The term "Net Available Cash," as used in the context of the Note, is defined, in applicable part therein, as Lippincott's "net cash after all operating and other expenses ...principal and interest payments to Maker's senior lender (scheduled or otherwise), payments of Excess Cash Flow to Maker's senior' lender (as required pursuant to the Credit Agreement), tax allocations and distributions, senior lender approved reserves, and amounts for senior lender covenant compliance." Note, Exhibit A, at p. 2.

11.    In order to facilitate that year-end calculation, the Note further required Defendant Lippincott to provide Plaintiff Shelley Romm "with copies of its regularly prepared year-end financial statements." Note, Exhibit A, at p. 2.

12.    Additionally, upon a default of these obligations by Lippincott, the the Note provides that Plaintiff Shelley Romm "may, at its option, (i) by written notice to [Defendant Lippincott], declare the entire unpaid principal balance of this Note and interest accrued thereon to be immediately due and payable, regardless of any prior forebearance, and (ii) exercise any and all rights and remedies available to it under applicable law, including, without limitation, the right to collect from [ Defendant Lippincott] all sums due under this Promissory Note." Note at p. 3. In accordance with the terms of the Note, an *Event of*

5

*Default* includes the failure "to pay any payment of principal or interest on this Promissory Note when and as such amounts become due and payable..." Note, Exhibit A, at p.3.

13.    On information knowledge and belief, the accountant for Lippincott prepared, but Defendant Lippincott failed to provide, a copy of, the company's regularly prepared year-end financial statement to Plaintiff Shelley Romm for the calendar year 2007 promptly after it was prepared.

14.    On June 2, 2008, Defendant Parente Randolph, in accordance with its agreement with Lippincott to provide the required audited financial statements,  prepared and presented the document entitled "FINANCIAL STATEMENTS FOR THE PERIOD JANUARY 2, 2007 (INCEPTION) TO DECEMBER 31, 2007 & INDEPENDENT AUDITORS' REPORT" ("Report"),  a copy of which is attached as Exhibit "B."

15.    The Independent Auditors' Report section includes the statement that "[i]n our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of Lippincott, LLC as of December 31, 2007, and the results of its operations and its cash flows for the period from January 2, 2007 (inception) to December 31, 2007 in conformity with accounting principles generally accepted in the United States of America." Report, Exhibit B, at p. 2.

16.    The Lippincott Financial Statement attached to the Report, and

6

specifically the Statement of Cash Flows for the applicable period ending December 31, 2007, reflects that the net increase in cash on the December 31, 2007 end-date was $889,217. Report, Exhibit B, at p. 6.

17.     Contrary to the clear availability on December 31, 2007 of sufficient net cash as defined by the terms of the note to mandate the payment in the amount demanded, Parente Randolph asserted, in unlawful conspiracy with Lippincott and its principal shareholder and with the intent to deny to Plaintiff Shelley Romm the lawful payment due under the terms of the Note as aforesaid, and without documentation or explanation, that "the company's Net Available Cash, computed as set forth in the promissory note, was below zero and accordingly, the first scheduled payment of $500,000 will be deferred for one year after the final scheduled principal payment." Report, Exhibit B, at p. 17.

18.     Upon receipt of the Independent Auditors' Report dated June 2, 2008, and in accordance with the terms of the Note, Plaintiff Shelley Romm, through her attorneys, made demand upon Lippincott for the payment required in the amount of $597,304.25. That demand has been denied by Defendant Lippincott.

### COUNT I
### Breach of Contract
### Against Defendant Lippincott

19.     Plaintiff repeats and re-alleges all of the paragraphs above as though fully set forth herein.

7

20.    The refusal of Defendant Lippincott to make the payment due under the terms of the Note is a breach of that obligation and requires that Defendant Lippincott make payment in full of the entire outstanding balance due of $2,000,000 plus interest thereon from the date of the breach.

**WHEREFORE**, Plaintiff Shelley Romm claims of Defendant Lippincott and demands judgment for damages in an amount in excess of $50,000 as follows:

(a)    damages in accordance with the terms of the Note in an amount of $2,000,000 plus interest and costs of litigation;

(b)   all other relief that the Court deems just and proper under the circumstances.

**COUNT II**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**
**Against Defendant Lippincott**

21.    Plaintiff repeats and re-alleges all of the paragraphs above as though fully set forth herein.

22.    The law of Pennsylvania implies a covenant of good faith and fair dealing into the contractual relationship between Plaintiff and Defendant Lippincott.

23.    In acting as described above, Defendant Lippincott wrongfully and unreasonably breached its duty implied in the contract to deal fairly and in good faith with Plaintiff Shelley Romm.

**WHEREFORE**, Plaintiff Shelley Romm claims of Defendant Lippincott

8

and demands judgment in an amount in excess of $50,000 as follows:

      (a)    damages in accordance with the terms of the Note of an amount of $2,000,000 plus interest and the costs of litigation;

      (b)  all other relief that the Court deems just and proper under the circumstances.

### COUNT III
### Fraud In the Inducement
### Against Defendants Lippincott, Platypus and Taffet

24.    Plaintiff repeats and re-alleges all of the paragraphs above as though fully set forth herein.

25.    The representations of Defendant Lippincott (by its appointed representatives, including but not limited to the assurances made by Defendant Taffet acting under the color of his position as President of Platypus Management, Inc., Executive Manager of Lippincott and for his own economic advantage), that it would make the payments of $500,000 in each of the four years following the end of the calendar year in which the Note was executed, were and were known and intended to be false and fraudulently made for the sole purpose of inducing Plaintiff to enter into the agreement of sale of the Company and the execution of the Note attached hereto.

26.    Absent Defendants' fraudulent promises to make the payments as set forth in the attached Note, Plaintiff Shelley Romm would not have agreed to defer the payment of $2,000,000 in accordance with the terms of the Note.

27.    As a direct result of Defendants' fraudulent inducement, Plaintiff Shelley Romm has presently suffered the loss of the full payments due under the terms of the Note in an amount of $2,000,000.

28.    Defendants' actions were willful, vindictive, malicious, outrageous, without cause and in reckless disregard of the rights of the Plaintiff.

**WHEREFORE**, Plaintiff Shelley Romm claims of Defendants Lippincott, Platypus and Taffet and demands judgment in an amount in excess of $50,000 as follows:

(a)    damages in accordance with the terms of the Note of an amount of $2,000,000, plus interest and the costs of litigation;

(c)    punitive damages against Defendants Lippincott, Platypus and Taffet ; and

(d)    all other relief that the Court deems just and proper under the circumstances.

### COUNT IV
#### Fraud
#### Against Defendants Lippincott, Taffet and Parente Randolph

29.    Plaintiff repeats and re-alleges all of the paragraphs above as though fully set forth herein.

30.    The actions of Defendants Lippincott, Taffet and Parente Randolph as aforesaid were fraudulent and undertaken to deny to Plaintiff Shelley Romm the payments mandated under the terms of the Note attached.

10

31.    The actions of Defendants Lippincott, Taffet and Parente Randolph were the basis upon which Defendant Lippincott denied to Plaintiff the payment due promptly following the completion and delivery to Lippincott and Plaintiff of the Independent Auditors' Report.

32.    The actions of Defendants Lippincott, Taffet and Parente Randolph have resulted in the loss to Plaintiff of the payment due under the attached Note.

**WHEREFORE**, Plaintiff Shelley Romm claims of Defendants Lippincott, Taffet, and Parente Randolph and demands judgment in an amount in excess of $50,000 as follows:

(a)    damages in accordance with the terms of the Note of an amount of $2,000,000, plus interest and the costs of litigation;

(b)    punitive damages against Defendant Lippincott, Taffet and Parente Randolph ; and

(c)    all other relief that the Court deems just and proper under the circumstances.

### COUNT V
### Conversion
### Against Defendants Lippincott and Taffet

33.    Plaintiff repeats and re-alleges all of the paragraphs above as though fully set forth herein.

34.    Defendants Lippincott and Taffet have retained and misappropriated the personal property and funds of the Plaintiff without right

11

or cause and have converted that property for their own use.

35.    As a direct result of these unlawful acts, Plaintiff has been caused the loss of use of that property and other great economic harm.

**WHEREFORE**, Plaintiff Shelley Romm claims of Defendants Lippincott and Taffet and demands judgment in an amount in excess of $50,000 as follows:

(a)    damages in accordance with the terms of the Note of an amount of $2,000,000, plus interest and the costs of litigation;

(b)    punitive damages against Defendants Lippincott and Taffet; and

(c)    all other relief that the Court deems just and proper under the circumstances.

**COUNT VI**
**Civil Conspiracy**
**Against Defendants Lippincott, Taffet and Parente Randolph**

36.    Plaintiff repeats and re-alleges all of the paragraphs above as though fully set forth herein.

37.    Defendants Lippincott, Taffet and Parente Randolph, and each of them, combined and agreed, with intent to act unlawfully and without justification, to deny Plaintiff of rights and benefits as set forth above, and thereafter individually and in concert, acted in furtherance of the conspiracy in a manner by which Plaintiff has suffered, and will continue to suffer, great damage.

12

**WHEREFORE**, Plaintiff Shelley Romm claims of Defendants Lippincott, Taffet and Parente Randolph and demands judgment in an amount in excess of $50,000 as follows:

(a)     damages in accordance with the terms of the Note of an amount of $2,000,000, plus interest and the costs of litigation;

(b)     punitive damages against Defendants Lippincott, Taffet and Parente Randolph ; and

(c)     all other relief that the Court deems just and proper under the circumstances.

Alan B. Epstein, Esquire (I.D. No.02346)
Jennifer Myers Chalal (.D. No. 77841)
SPECTOR GADON & ROSEN
  A Professional Corporation
1635 Market Street, Seventh Floor
Seven Penn Center
Philadelphia, PA  19103
(215) 241-8888
Attorneys for Plaintiff, Shelley Romm, Inc.

Dated:   September 8, 2008

13