**EXHIBIT 26**

-----Original Message-----
From: David M. M. Taffet [mailto:dmmt@platypus.bz]
Sent: Thursday, August 08, 2013 9:11 AM
To: Jeffrey B. Russell, M.D.
Cc: 'Tracy Renee'; 'rosemary russell'
Subject: RE: Buy-out Accounting & Invoices for May, June & July
Importance: High

Jeffrey,

They did not walk away because of a $100,000 of difference.

They walked away because we worked really hard to get them to a number based on a an agreed upon principle--that being that they would cover all your out-of-pocket hard costs (AKA acquisition and capital expenses) then, after we got them to a number above what they would have liked to have paid while relying on this principled definition, you and Rosemary, as the sellers, in their words, "bait & switched" with absolutely no principle other than a desire to get $100,000 more in the 11th hour. They were stunned. I had represented faithfully that we had full agreement on the terms and approach.
Indeed, if you look back on your E-mails, you will see that both of you expressly agreed to proceed on the terms that we then successfully negotiated on your behalf.

Additionally, your statement that "for this portion of the agreement, we have a deal" made it impossible for me to represent that you weren't going to similarly look to jack the price or eliminate a piece of the portfolio once they got to closing.

As a relevant aside, consider once again what I already pleaded for you to understand before:

Was risking a $4+ million dollar deal that would close in less than 30 days and make you substantially whole really worth breaking with integrity with an eye to getting an additional measly $100,000?

In the now defunct buyer's perspective, using your words, they were "very surprised that [the two of you] would" make an unprincipled play and risk a deal "with only $100k difference!" It made them question what more you would be willing to do if given the chance.

I sense that I would be more disappointed on your behalf if I felt that you really cared whether or not this deal went through. With that said, your decision to risk it for $100,000 tells me that you are happy with the way things are going and, as such, do not, in the end, truly want to exit.

1

Am I correct in my conclusion?

Assuming so, please make good on your contractual obligations today and let's schedule a conference call for later today or tomorrow to determine next steps.

Assuming not, please make good on your contractual obligations today and let's schedule a conference call for later today or tomorrow to determine next steps.

Yes, those two sentences are intentionally the same. The only difference will be what we discuss during the conference call.

I look forward to hearing back from both of you.



David M. M. Taffet
(610) 529-9785
_____
From: Jeffrey B. Russell, M.D. [jbrussell@ivf-success.com]
Sent: Wednesday, August 07, 2013 10:58 AM
To: David M. M. Taffet
Cc: 'Tracy Renee'; 'rosemary russell'
Subject: RE: Buy-out Accounting & Invoices for May, June & July

 I am very surprised that they walked away with only 100k difference!
 so they are ok with the 3,042,750? or was that in question as well?

 and where is there any information about 50 Fairview being renegotiated?
 where did you get that from????
 .. I just asked if they were part of that deal since you were asking a bank
 (?) for the funding before the closing??




-----Original Message-----
From: David M. M. Taffet [mailto:dmmt@platypus.bz]
Sent: Wednesday, August 7, 2013 10:19 AM
To: Jeffrey B Russell, M.D.
Cc: Tracy Renee; rosemary russell
Subject: Re: Buy-out Accounting & Invoices for May, June & July

Jeffrey and Rosemary,

As I feared, the prospects we cultivated for over a month rejected the deal and they have stepped away from the prospects of a partnership altogether.

This is the text I received just moments ago:


We do not trust your selling partner and therefore are walking away from the prospects of the partnership.

2

They certainly did not appreciate the 11th hour attempt to renegotiate the terms as presented and agreed to by all parties. Aside from what they termed "unprincipled" negotiation around a known term--Hard costs, they most resented the suggestion that you were ready to renegotiate the elements of
50 Fairview. They feel no level of trust with the two of you despite my representations and best efforts.

This is terribly unfortunate given that I thought I had faithfully negotiated on your behalf and at your request and with your consent in the spirit this called for, on the terms you had agreed to and in the time frame you needed.  But, as I always say, it is what it is.

Next!

Moving forward, Tracy and I are pleased that you have expressed such confidence in our efforts and in the portfolio.

Please make the invoiced call payment that is due today.

We will regroup soon to determine how best to continue to maintain and to grow our portfolio.  We are thrilled with its prospects.

David M. M. Taffet
(610) 529-9785

Sent on the run (or at odd hours) from my iPhone

On Aug 6, 2013, at 11:00 PM, "Jeffrey B Russell, M.D." <jbrussell@ivf-success.com> wrote:

> hi david..
>
> i started going through the invoices, but I noticed the difference
between
> your number and my number and at looking at my email below the
> difference was almost exactly 200k...
>
> your initial number you came up with was 3,042,740.54 and my number
before
> taking out the soft cost was 3,242,470  the soft costs, appears to be
> close to 100k (meals and entertainment)  so splitting  the difference,
> the number is 3,142,750.00!
>
> so at 3,142,750 from my standpoint, for this portion of the
> agreement, we have a deal.
>
> jeff
>
>
> -----Original Message-----
> From: Jeffrey B Russell, M.D. [mailto:jbrussell@ivf-success.com]
> Sent: Tuesday, August 6, 2013 10:54 PM
> To: jbrussell@ivf-success.com
> Subject: FW: Buy-out Accounting & Invoices for May, June & July

3

> Importance: High
>
> ……………….
> hi David..
>
> it looks we are not far off and close to closing this deal..
> my numbers are:
>
> Acquisition for NOLA         1,200,000
> No and Chicago              204,935 (288,935 minus refund/ credit
> for Indiana and Exchange $84000)
>
> Monthly calls and wires to 4/2013   1,701,702
>  May, June, July invoices         135,835
>
> Total                   3,242,472
>
>
> 50 Fairview (title)         1,200,000
> (interest pd to date)           21,009
>  aqua to be transferred to you
>
> total to be paid for title to     1,221,009
> 50 Fairview
>
>
> Penn liberty           210,000
>
>
> Total pd to jeff/rosemary      4,673,481
> paid to Platypus           135,835   (cashier's check paid to
> platypus at closing)
>
>
> if you think we  could close this by the end of the month, that would
> be great!
>
> thanks
>
> Jeff
>
>
>
>
>
>
>
>
>
> -----Original Message-----
> From: David M. M. Taffet [mailto:dmmt@platypus.bz]
> Sent: Saturday, August 03, 2013 2:06 PM

4

> To: rosedelaware@comcast.net; jbrussell@ivf-success.com
> Cc: beingthyself@yahoo.com
> Subject: Buy-out Accounting & Invoices for May, June & July
> Importance: High
>
> Rosemary & Jeffery:
>
> In advance of the proposed buy-out, I have prepared an accounting of
> the acquisition and capital expenses you incurred to date.  As we
> discussed
and
> you agreed, none of your soft costs will be covered in the transaction.
>
> Please review this and confirm that we are in agreement as to the
> accuracy of these numbers.
>
> *  Acquisition Costs for New Orleans ($1.2 million), Chicago and
additional
> New Orleans properties ($155,736) and 50 Fairview ($1.2 million note)
> for
a
> cash total of $1,355,736 and a loan assumption of $1.2 million.
>
> *  Proportion of the Penn Liberty $700,000 note: $210,000.
>
> *  Capital expenses (Material & Labor) incurred through December 2012
> and reflected in invoices out to January 2013: $1,255,019.63.
>
> * Capital expenses as Invoiced for February through April, net of
> April's advance requirement:
>
> - February 2013: 30% of $529,064.34, which is equal to $158,719.30
>
> - March 2013: 30% of $292,668.44, which is equal to $87,800.53
>
> - April 2013: 30% of $165,433.24, which is equal to $49,629.97
>
> * Capital expenses reported in the current invoice (which I have
> attached for payment before the close of business on Wednesday)
> covering the months of May 2013, June 2013 and July of 2013:
>
> -May 2013: 30% of $170,032.97, which is equal to $51,009.89
>
> -June 2013: 30% of $151,125.06, which is equal to $45,337.52
>
> -July 2013: 30% of $131,625.68, which is equal to $39,487.70
>
>
> The total to be paid is $3,042,740.54 in cash, $1.2 million in
> acquisition of 50 Fairview and $210,000.00  in payment against the
> $700,000 Penn
Liberty

5

> Note with an assumption and/or extinguishment of your current liability.
>
> We are on track for an end of the month (or sooner) close of at least
> the
> $3,042,740.54 in cash. We are still working with local institutions to cover
> the $1.2 million for Fairview and the $210,000 payment and/or
> assumption of
> the $700,000 Penn Liberty Note. With that said, we have confidence
> that we will close on 50 Fairview and the Penn Liberty Loan at close
> to the same time as the anticipated payment of the $3,042,740,54.
>
> To proceed, I need closure on the accounting and payment of the invoices. To
> that end, Rosemary and Jeffrey, I respectfully request that each of
> you on your joint and individual behalf reply to all at your earliest
> convenience and confirm that the accounting is both accurate and
> acceptable. Also, please make payment in full by the close of business
> on Wednesday of the attached invoices, all of which we have held
> anticipating an earlier
close.
> As the accounting above reveals, upon a close, you will receive
> repayment on
> these invoices in the amounts of $51,009.89 for May, $45,337.52 for
> June and
> $39,487.70 for July to cover your portion of the capital expenses in
> each of
> those months. In addition, prior to any close, we will require payment
> of any then outstanding invoices yet to be billed.
>
> We look forward to hearing back from both of you, to receiving payment
> and to reaching a successful close.
>
> David M. M. Taffet
> (610) 529-9785
>