**EXHIBIT 32**

**From:** David M. M. Taffet [mailto:dmmt@platypus.bz]
**Sent:** Friday, December 20, 2013 11:11 AM
**To:** Jeffrey;B Russell
**Subject:** Fwd: TRW's NOLA Property Portfolio

FYI

David M. M. Taffet
(610) 529-9785

Sent on the run (or at odd hours) from my iPhone

Begin forwarded message:

> **From:** Tracy Renee <beingthyself@yahoo.com>
> **Date:** December 20, 2013 at 10:05:48 AM CST
> **To:** Alton McRee <Alton.McRee@fidelityhomestead.com>
> **Cc:** Susan Tucker <Susan.Tucker@fidelityhomestead.com>, "David M. M. Taffet" <dmmt@platypus.bz>
> **Subject: Re: TRW's NOLA Property Portfolio**
> **Reply-To:** Tracy Renee <beingthyself@yahoo.com>
>
> Alton,
>
> In June of this year, you initiated a process to cement a banking relationship with your bank and Platypus Holdings.
>
> By way of reminder, Platypus Holdings has purchased, improved and managed properties in Chicago, New Orleans and outside of Philadelphia that are valued upon completion in excess of $21 million. The cost to obtain and improve these properties, not including taxes, utilities and soft costs associated with running the company, has been only slightly more than $4 million. Thus, the equity value in the properties upon completion is approximately $17 million. Importantly, the entire portfolio is unleveraged.  NO DEBT.
>
> When we approached your bank, we were seeking a loan of approximately $4 million to buy out a member of Platypus and to complete the properties located in New Orleans.
>
> As you might recall, you had Sue Tucker, whom I've copied, reach out to me to explore making a loan.  Sue has been wonderful—effervescent, personable and available.
>
> I write to share with you that despite Sue's remarkable qualities, we somehow have ended this 6-month journey on an inauspicious note yesterday afternoon with a call from Sue explaining that the credit committee that was tasked this week with evaluating a loan to Platypus Holdings of between $2 million to $4 million would be willing to engage in a test relationship with Platypus if we were to bring to the table a second, liquid guarantor.  According to Sue, were we to bring that person to the table (which, importantly, we already had and in spades—Think Whale), the bank would consider loaning against one property $85,000, of which $10,000 would be set aside as an interest reserve.
>
> Surreal. Astounding. Unbelievable.
>
> Essentially, Sue reported that the bank is only willing to extend less credit than the guaranteeing partner enjoys each month on just one of his unsecured credit cards, but only if that partner were to sign personally (which he is fully willing to do), bring a second

guarantor (which he had prior to the credit committee meeting), use the property as collateral (which of course he would) and pay all of the interest up front (which he had already offered he would).

I think with just a touch of detail and a brush of color you would understand my conviction that there must be a tremendous misunderstanding here.

The property in question is 1443 North Roman. We purchased that property in July of 2012 for a little over $82,119 cash.  To date, we've spent approximately $135,000 in cash to improve the property. As my reference to "cash" would suggest, there is NO debt on this property or, importantly, as stated above, on any of the properties Platypus owns.  This property has produced and continues to produce $1,000 a month in monthly rent through an attached 2-bedroom unit and serves as our own home.  The parts yet to be completed for a projected $75,000 are a commercial space beneath our own living space and a detached efficiency that we would rent. Neither unfinished space detracts from the livability or value of the property.

Essentially, the bank stated that it is only willing to loan less than 40% of the ACTUAL dollars we have into the property, which is far less than the actual value. Thus, if we were to look at a loan to value, depending on the appraisal, we would be looking a loan that is approximately 20% to 10% of the appraised value of the completed property.

To add further insult to injury, the amount of interest set aside would suggest an interest rate in excess of 15% (before accounting for the enriched return the bank would enjoy by not needing to loan the interest it "receives") and it would have a security interest against a property producing $12,000 a year.

Again, as if these stats were not sufficiently illustrative of the fact that a mistake must have been made, let me reiterate that the bank, according to Sue, were willing to make this loan only if my partner guaranteed it, if he brought a second, more liquid guarantor and if he paid all the interest up front.

Really?!

This does not reflect the community-savvy lending bank reputation that you and I discussed and that your bank has.

In New Orleans alone, not including a theater on Claiborne that has significant tax credits and a historical home on Dumaine (both of which have significant projected value but are more difficult to assess), Platypus spent approximately $1,000,000 to purchase 10 properties and then invested approximately $1.6 million to improve them.

The $2.6 million purchase/investment has yielded to date 5 completed properties that produce $12,275 in monthly rent, 2 properties (including North Roman) near completion that produce $2,500 in rent with potential for more rent and/or income upon completion and 3 yet to be completed properties, one of which is projected to produce over $6,000 a month in rent and two others projected to produce over $3.2 million in long-term capital gains.

To complete its slated improvements in New Orleans and to cover deferred and unrelated obligations, Platypus Holdings seeks $2.1 million in a line of credit, which constitutes slightly less than 70% of the actual purchase/capital dollars spent in New Orleans (again excluding any dollars employed to purchase and/or improve the theater on Claiborne and the historical  home on Dumaine) and less than 25% of the projected value of the New Orleans portfolio (yet again before assigning any value to the theater on Claiborne and the historical  home on Dumaine).

Platypus would like this line available for 24 months, subject to annual renewals.  In return, Platypus will agree to the following:

> (1) A secured interest in all of Platypus's New Orleans assets, including the theater on Claiborne and the historical home on Dumaine;
>
> (2) Full recourse with a confession of judgment against its sole Manager, David M. M. Taffet, who has high credit, a strong operating history and a significant balance sheet;
>
> (3) Full recourse with confession of judgment against its liquid, silent partner that has strong credit, significant annual income (estimated to be consistently in the high 6 figures to low 7 figures) and a sizeable balance sheet; and
>
> (4) A 24 month interest reserve paid up front.

Platypus anticipates paying the loan in full before the end of the 2-year period using the anticipated sale upon completion of its Bywater property located at 901 Piety, which is valued at $2.8 million.

My partner and I would welcome the opportunity to discuss this loan with you. To that end, I will call you later today.

**T. Williams**
*".....knowing eternal gratitude"*
**efax: 901-255-7807**


On Thursday, June 13, 2013 12:39 PM, Susan Tucker <Susan.Tucker@fidelityhomestead.com> wrote:
Tracy,

2

Alton asked me to reach out to you to discuss your credit needs in further detail. We appreciate and are excited about the opportunity you have presented to Fidelity Homestead Saving Bank in developing a long -term banking relationship with you and your company.

Please call me at your earliest convenience.

Sue

Susan P. Tucker
Vice President, Commercial Lending
1811 Metairie Ave.
Metairie, La. 70005
Fidelity Homestead Savings Bank
Phone:504-833-1433
Fax:504-833-4299
Cell: 504-559-3514